Emma Jeane TAYLOR, Plaintiff in Error,

v.

J. B. TAYLOR, Defendant in Error.

No. 40205.

Supreme Court of Oklahoma.

Nov. 19, 1963.

Rehearing Denied Dec. 12, 1963.

Harland A. Carter, Okmulgee, for plaintiff in error.

Joe Ralls, Atoka, for defendant in error.

PER CURIAM.

This is an appeal from an order refusing to modify a decree of divorce with regard to the custody of minor children.

The divorce petition was filed by the mother, and concerning the custody of the children, it recites merely that "plaintiff and defendant have satisfactorily agreed upon the custody and care of the minor children * * * between themselves". After having refused to sign the first waiver presented to him and requiring changes, the father signed a waiver and entry of general appearance making substantially the same allegation. The decree of divorce was granted on September 19, 1960; it recited that the parties had agreed on the custody of the children and specifically approved the agreement; however, no details of the agreement were incorporated in the decree. At that time, the children, all girls, were 12, 11 and 8 years of age respectively, and they were left in the custody of the father.

Immediately after the divorce the mother left Atoka for Okmulgee, and, about two months later, married another man in Arkansas.

On May 31, 1961, the mother filed her motion to modify decree of divorce in which she alleged generally that the parties had agreed (prior to the 1960 decree) that the father should have custody of the children and the mother should have reasonable visitation rights; *and* that the mother should have them for about 12 weeks in the summer. She alleged that the children had been with their father since the divorce, and that he had denied her the right to visit the children. She asked the court to "modify or clarify" the decree so as to award her custody "for certain periods of time" with the defendant father to have visitation rights; she further asked that the court order the defendant to pay her a suitable amount for child support money during the time when the children were with her.

The father filed a response to the motion controverting most of its allegations. He alleged, among other things, that the agreement was simply that he should have custody of the children; he denied that he had refused permission for the mother to visit the children; he further alleged that there had been no such change of condition as to justify the court in modifying the divorce decree.

At a hearing on June 27, 1961, there was testimony by the mother, the father, a neighbor and one of the children. The testimony of the mother and father was in sharp conflict, although, from their testimony as a whole, it is fair to say that she did not prove her allegation that she had been denied visitation rights. There is reference in the testimony to a prior divorce (granted by the same judge in 1957), in which custody of the children was given to the father, and to a later reconciliation of the parties and vacation of the decree. The record justifies the conclusion that there was, and still is, a considerable amount of bitterness between the father and mother.

One of the issues in this hearing was the question of what was the precise agreement of the parties, prior to the 1960 divorce, concerning the custody of the children. Both parties gave testimony in accordance with the allegations of their pleadings on this point. However, at the conclusion thereof, the court made the following remarks:

"* * * it has been before the Court on other occasions and I distinctly remember when the last divorce was granted that there was an agreement between them and that the children would be left with their father regard-

less of what that Journal Entry shows there * * *."

■ The agreement of the parties as to custody of the children was, of course, not binding upon the court. Parkey v. Parkey, Okl., 371 P.2d 711. Its chief evidentiary value in the instant case lies in the light it throws on the attitudes of the parties in reference to the custody of the children at the time of the agreement.

During this hearing, the judge took the three little girls into his office and talked with them privately. At the conclusion of the hearing, he took the matter under advisement and announced that he would cause an investigation to be made after which further hearings would be held. He also informally restrained the mother from "going about" the father's home and from visiting the children.

The next hearing, set at request of counsel, was held on May 8, 1962. Further testimony was given by the mother and father, chiefly respecting the relative financial situations of the parties, and the living conditions in the home of the mother. The mother's present husband testified as to his income and living expenses, and his willingness to have the mother's children live in their home. It appears that the second husband had been married twice before and at that time was making regular payments to his first wife for the support of his three children by her. There was also introduced as an exhibit a letter from the Director of the Department of Public Welfare containing a report of the investigation of the mother made at the request of the trial judge. It was generally favorable to the mother and her present husband. There was also testimony as to the financial situation of the father, who is also now remarried. It is fair to say that the financial situations of the two couples are about the same, although the father's "take-home" pay is a little more because of the child support obligations of the mother's second husband.

There is testimony by the father, denied by the mother, to the general effect that most of the trouble between them had been caused by her excessive drinking. There is testimony by the mother, not denied by the father, that she has not been drinking at all since her remarriage.

At the conclusion of the latter hearing, the trial court entered judgment leaving custody of the children in the father. He modified, or clarified, the decree to the extent of specifically providing that the mother should have "reasonable visitation privileges" in Atoka, at the convenience of the father and the children. In remarks from the bench when judgment was pronounced, he said " * * * it's not an easy job to come to a decision in cases such as this * * *" and " * * * it's difficult at its best when the parents of children divorce and especially under the circumstances in this particular case".

On appeal, although the mother does ask for a divided custody arrangement, her chief complaint seems to be that under the order, the children are not permitted to visit in her home in Okmulgee. In support of her argument she cites three cases: Bradford v. Bradford, Okl., 327 P.2d 684; Childers v. Childers, 202 Okl. 409, 214 P.2d 722; and Garner v. Garner, 143 Okl. 183, 288 P. 298.

None of these cases is precisely in point. In the Bradford case, the plaintiff in error (mother) appealed from an order denying her any visitation rights at all; this court reversed the judgment and remanded the case with directions to grant the mother reasonable visitation rights. In Childers v. Childers the mother appealed from an order modifying a divorce decree so as to give the father part time custody of the child; this court affirmed on the ground that under the facts shown, there had been such a change of condition as to justify a modification of the original decree. In the Garner case, the mother appealed from an order giving the father (who had had custody of the child each Sunday) custody, instead, during the last calendar week of June, July and August of each year. This court, in affirming, held that under the par-

ticular facts in that case, the modification made was not within the rule requiring that in order to justify a modification of a custody order, a change in the condition of the parties must be shown. Other questions, not pertinent in the instant appeal, were also involved in the above noted cases.

■ This has been a most difficult case for us, as it must have been for the trial judge. We are aware of the well established rule to the effect that the trial judge, who sees and hears the witnesses, in a non-jury case, and observes their demeanor on the witness stand, is in a much better position than this court to determine the facts. This is especially true in this case, where the same judge heard both the 1957 and 1960 divorce cases. It may be presumed that he is aware of the reason why custody of the children was given to the father after the 1957 case. Nevertheless, we are constrained to hold that the trial court's finding of fact that there had been no change in the condition of the parties since the 1960 decree is against the clear weight of the evidence. The uncontradicted evidence is to the effect that the mother has remarried, and established a home and the legal aspect of the validity of that marriage (entered into in another state less than six months after her divorce) is not a conclusive factor in this case. She testified that she thought her marriage was legal, and under the facts in this case, it became legal with the expiration of the six months period and their continued cohabitation as husband and wife. Mantz v. Gill, 147 Okl. 199, 296 P. 441; Earley v. State Industrial ·Comm., Okl., 269 P.2d 977. There was uncontradicted testimony that she has not indulged in the use of intoxicants since her remarriage, if she ever did. The report of the investigation of her and her home was favorable, although it did show that her present husband is frequently transferred in his work. They live in a new, large trailer home which is modern in every respect and has three bedrooms. The defendant husband produced no evidence bearing upon

conditions in the mother's home, or her conduct, since her remarriage.

Considering all the facts in this case, we hold that the trial court erred in his finding that there had been no change of condition since the 1960 divorce.

■ Although we are loath to disturb the trial court's order, we are of the opinion that the restrictions upon the mother's visitation rights (preventing her from having the children visit her in her own home) are unnecessarily severe, and that the order should be modified so as to provide that the mother's reasonable visitation rights shall include the right to have her children visit her in her own home, at times to be fixed by the trial court, convenient for *all* parties involved, with primary consideration being given to the welfare of the children.

■ It is perhaps unnecessary to point out that the trial court has continuing jurisdiction of the question of the custody of these children till they reach their majority, and may modify its orders in that regard at any time when the best interests of the children demand it. 12 O.S.1961 § 1277; Sullins v. Sullins, Okl., 280 P.2d 1009.

■ In his answer brief, defendant father suggests that this court is without jurisdiction to entertain this appeal because of the failure of the mother to file a motion for new trial, citing O'Balliet v. Lillard, 205 Okl. 467, 238 P.2d 798. However, as is pointed out in the cited case, no motion for new trial is necessary where the contested question of fact arises upon a motion and not upon the pleadings. See also In re Guardianship of Butler, 130 Okl. 241, 266 P. 1106, and Powell v. Nichols, 26 Okl. 734, 110 P. 762, 29 L.R.A.,N.S., 886.

■ In child custody cases it is the duty of the court to carefully examine the facts and enter such order as appears to be for the best interest of the child, and this duty exists regardless of whether a response has been filed to the motion for change of custody. There is reason for holding in child custody litigation, as in guardianship accounts (In re Guardianship of Butler,

652

supra), that questions of fact arising at the hearing upon the motion may be reviewed in this court without there having been filed a motion for new trial. It is to be observed, however, that this appeal was taken prior to the effective date of 12 O.S.1961 § 651, as amended in 1963.

It should be noted that counsel now representing the parties to this action did not appear in the original 1960 divorce proceedings.

As modified in accordance with this opinion, the judgment of the trial court is affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

BLACKBIRD, C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.

HALLEY, V. C. J., and BERRY, J., dissent.