2004 OK 43

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Cordes Martin GIGER, Respondent.**

**SCBD No. 4796.**

Supreme Court of Oklahoma.

June 8, 2004.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Cordes Martin Giger, Respondent, Norman, OK, pro se.

OPALA, V.C.J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the complaint and of its disposition?[1] (2) Is a public censure an appropriate disciplinary sanction for the breach of professional ethics set forth in count one of the complaint? and (3) Is dismissal without prejudice an appropriate disposition of count two of the complaint? We answer all three questions in the affirmative.

I

**INTRODUCTION TO THE RECORD**

¶ 2 The Oklahoma Bar Association (the "Bar") commenced this disciplinary proceeding on 21 March 2003 against Cordes Martin Giger (respondent or Giger), a lawyer whose license to practice law is currently suspended, by filing a formal complaint in accordance with the provisions of Rule 6.1 of the Rules Governing Disciplinary Proceedings ("RGDP").[2] The complaint alleges in two

---

1. The record consists of the transcript of the hearing held before a trial panel of the Professional Responsibility Tribunal, exhibits offered by the complainant which were admitted into evidence at the hearing, and the trial panel's majority and minority reports.

2. The Rules Governing Disciplinary Proceedings are codified at 5 O.S.2001, Ch.1, App. 1–A. The provisions of RGDP Rule 6.1 state:
   "The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission,

counts violations of the RGDP and of the Oklahoma Rules of Professional Conduct ("ORPC").[3] A trial panel of the Professional Responsibility Tribunal (the "trial panel") conducted a hearing (the "PRT hearing") on 12 November 2003 to consider the charges. The parties submitted no stipulations.

¶3 Upon completion of the hearing and after consideration of the testimony and exhibits on file, two members of the trial panel issued a report finding that respondent engaged in the misconduct alleged in count one of the complaint, but recommended that no additional disciplinary sanction be imposed upon respondent beyond the two-year-and-one-day suspension he is already serving under this court's order of 10 June 2003 in *State ex rel. Oklahoma Bar Association v. Giger ("Giger II")*.[4] The trial panel majority found insufficient evidence to sustain count two of the complaint and recommended that it be "dismissed." The third member of the trial panel agreed with the majority's fact findings and with its recommendation as to discipline for respondent's misconduct in count one of the complaint, but would have continued the hearing on count two until such time as the Bar is prepared to introduce evidence.

> and filed with the Chief Justice of the Supreme Court."

3. The Oklahoma Rules of Professional Conduct are codified at 5 O.S.2001, Ch. 1, App. 3–A.

4. 2003 OK 61, 72 P.3d 27.

5. *State ex rel. Okla. Bar Ass'n v. Leigh*, 1996 OK 37, ¶11, 914 P.2d 661, 666; *State ex rel. Okla. Bar Ass'n v. Eakin*, 1995 OK 106, ¶8, 914 P.2d 644, 647; *State ex rel. Okla. Bar Ass'n v. Bolton*, 1994 OK 53, ¶15, 880 P.2d 339, 344; *State ex rel. Okla. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶11, 848 P.2d 543, 545; *State ex rel. Okla. Bar Ass'n v. Raskin*, 1982 OK 39, ¶11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113, 115.

6. *Eakin, supra* note 5 at ¶8, at 648; *State ex rel. Okla. Bar Ass'n v. Downing*, 1990 OK 102, ¶12, 804 P.2d 1120, 1122–1123; *Raskin, supra* note 5 at ¶11, at 265–266.

7. *Leigh, supra* note 5; *Eakin, supra* note 5 at ¶8, at 647–648; *State ex rel. Okla. Bar Ass'n v. Lloyd*, 1990 OK 14, ¶8, 787 P.2d 855, 858; *State ex rel. Okla. Bar Ass'n v. Stubblefield*, 1988 OK 141, ¶7, 766 P.2d 979, 982; *State ex rel. Okla. Bar Ass'n v.*

## II

### THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

■ ¶4 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance.[5] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, including the licensure, ethics, and discipline of this state's legal practitioners.[6] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, non-deferential, *de novo* examination of all relevant facts,[7] in which the conclusions and recommendations of the trial panel are neither binding nor persuasive.[8] In this undertaking we are not restricted by the scope-of-review rules that govern corrective relief on appeal or certiorari, proceedings in which another tribunal's findings of fact may have to be left undisturbed by adherence to law-imposed standards of deference.[9]

*Cantrell*, 1987 OK 17, ¶1, 734 P.2d 1292, 1293; *State ex rel. Okla. Bar Ass'n v. Brandon*, 1969 OK 28, ¶5, 450 P.2d 824, 827. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration. The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination *of another tribunal's record.*

8. *Eakin, supra* note 5 at ¶8, at 648; *Raskin, supra* note 5 at ¶11, at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a), 5 O.S.2001, Ch.1, App. 1–A, which states in pertinent part:

> "The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

9. *Bolton, supra* note 5 at ¶15, at 344; *Eakin, supra* note 5 at ¶8, at 648; *State ex rel. Okla. Bar Ass'n v. Farrant*, 1994 OK 13, ¶7, 867 P.2d 1279,

¶ 5 The court's duty can be discharged only if the trial panel submits a complete record of the proceedings.[10] Our initial task is to ascertain whether the tendered record is sufficient to permit (a) this court's independent determination of the facts and (b) its crafting of an appropriate discipline. The latter is that which (1) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (2) avoids the vice of visiting disparate treatment on the offending lawyer.[11]

¶ 6 Having carefully scrutinized the record submitted to us in this proceeding, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct.

## III

### RESPONDENT'S MISCONDUCT ALLEGED IN COUNT ONE OF THE COMPLAINT CALLS FOR DISCIPLINE BY PUBLIC CENSURE

¶ 7 The Bar alleges in count one of the complaint that respondent violated the provisions of ORPC Rule 8.4(b),[12] ORPC Rule 8.4(c),[13] and RGDP Rule 1.3 [14] by committing a criminal act. The Bar alleges that respondent entered a Norman Wal Mart on 15 September 2001, took a package of batteries from the shelf, opened the package, placed the batteries in his pocket, discarded the packaging, and proceeded to leave the store without paying for the batteries. The Bar alleges that respondent was apprehended by store security in the parking lot and charged with petty larceny in Norman Municipal Court where, on 8 November 2001, he pled *nolo contendere* to the charge.

¶ 8 In answer to the complaint, respondent admits only that he entered the store and put the batteries in his pocket. His answer does not specifically deny the Bar's remaining allegations, but he testified at the PRT hearing that whatever he did, he did inadvertently and without the intent to steal the batteries from the store. Rather than contest the facts, respondent's answer asserts as a defense that the petty larceny incident cannot serve as the basis for discipline in this proceeding because the court has already dealt with the incident in *Giger II* and disposed of it.

¶ 9 In *Giger II*, the Bar sought to impose additional discipline on respondent for violating the terms of an earlier disciplinary suspension imposed on respondent in *State ex rel. Oklahoma Bar Association v. Giger*

1284. *Accord, Levi v. Mississippi State Bar*, 436 So.2d 781, 782 (Miss.1983).

10. The provisions of RGDP Rule 6.13, 5 O.S. 2001, Ch. 1, App.1–A, state in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat...."

11. *Eakin, supra* note 5 at ¶ 9, at 648; *Bolton, supra* note 5 at ¶ 16, at 345; *State ex rel. Okla. Bar Ass'n v. Perceful*, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

12. The provisions of ORPC Rule 8.4(b), 5 O.S. 2001 Ch. 1, App. 3–A, state:

"It is professional misconduct for a lawyer to:
* * * * *
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; ..."

13. The provisions of ORPC Rule 8.4(c), 5 O.S. 2001 Ch. 1, App. 3–A, state:

"It is professional misconduct for a lawyer to:
* * * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ..."

14. The provisions of RGDP Rule 1.3, 5 O.S.2001 Ch. 1, App. 1–A, state:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

("*Giger I*").[15]  Among the acts of misconduct alleged in *Giger II* as grounds for imposing additional discipline was the same petty larceny episode we are considering today.  The Bar presented evidence in *Giger II* that respondent committed the crime and that he pled *nolo contendere* to it, but because both the crime and the plea took place prior to the effective date of the order in *Giger I*, we determined that the incident could not serve as a basis for imposing additional discipline for violating the terms of the earlier order.  In a footnote, we suggested that the petty larceny charge might be grounds for independent disciplinary sanctions.[16]  The Bar now asks us to impose such sanctions.

¶ 10 Respondent does not identify the legal principle upon which he rests his contention that the court cannot again consider the petty larceny matter, but we surmise that he is referring to either double jeopardy or one of the preclusion doctrines.  In either case, we disagree that the petty larceny incident is now beyond the court's constitutionally vested authority to discipline wayward practitioners.

15.  2001 OK 96, 37 P.3d 856.

16.  *See Giger II, supra* note 4 at ¶ 23, n. 27, at 37, n. 27.

17.  Art. 2, § 21 OKLA. CONST.

18.  Amend. V., U.S. CONST.

19.  *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969) ("[W]e today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment.").

20.  *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct. 379, 387, 87 L.Ed. 443 (1943) (*quoting Moore v. Illinois*, 14 How. 13, 19–20, 14 L.Ed. 306 (1852)).

21.  *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938); *Hess, supra* note 20 at 548–549, 63 S.Ct. 386–87 (stating that only "criminal punishment to vindicate public justice ... subject[s] the defendant to 'jeopardy' within the constitutional meaning."); *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (stating that for constitutional purposes, "jeopardy describes the risk that is traditionally associated with a criminal prosecution.").

¶ 11  Oklahoma's prohibition against double jeopardy provides that having been acquitted by a jury, no person shall again be "put in jeopardy of life or liberty for that of which he has been acquitted.  Nor shall any person be twice put in jeopardy of life or liberty for the same offense." [17]  Its federal counterpart provides in pertinent part that "no person shall be ... subject for the same offense to be twice put in jeopardy of life or limb...." [18] The federal guarantee is applicable to the states through the Fourteenth Amendment.[19]  The double jeopardy protections do not prohibit the imposition of all additional sanctions that may "in common parlance" be described as punishment.[20]  They protect only against the imposition of multiple *criminal* punishments for the same offense.[21]  Although to the suspended or disbarred lawyer, a disciplinary sanction may feel like punishment, it is not in law.[22]  Bar discipline is one of three distinct *remedial* tracts to enforce a lawyer's accountability for practice-related misdeeds.[23]  Because professional disciplinary proceedings are remedial, not punitive, they are not subject to double jeopardy strictures.[24]

22.  *State ex rel. Okla. Bar Ass'n v. Groshon*, 2003 OK 112, ¶ 16, 82 P.3d 99, 106 ("The disciplinary process, including the imposition of a sanction, is designed not to punish the delinquent lawyer, but to safeguard the interests of the public, the judiciary, and of the legal profession."); *State ex rel. Okla. Bar Ass'n v. Bradley*, 1987 OK 78, ¶ 22, 746 P.2d 1130, 1134 ("The ultimate purpose in disciplining attorneys is not punishment but purification of the Bar and protection of courts and public in general.").

23.  *See Unit Petroleum Co. v. Nuex Corp.*, 1991 OK 21, ¶ 5, 807 P.2d 251, 255 (Opala, C.J., with whom Kauger, J., joins, dissenting).

24.  *See e.g. Matter of Discipline of Babilis*, 951 P.2d 207, 214 (Utah 1997) ("The penalties available under the Standards for Imposing Lawyer Sanctions are not punishment for double jeopardy purposes.  An attorney's license to practice law is contingent on compliance with professional ethical standards.  A restriction on, or withdrawal of, the right to practice law as a sanction for violation of professional ethical standards is remedial in nature.... Attorney discipline therefore is neither punitive nor a criminal penalty in any sense."); *Attorney Grievance Comm'n of Md. v. Brown*, 308 Md. 219, 517 A.2d 1111, 1112 (1986) (Attorney's former jeopardy claim rejected "because lawyer discipline proceedings are not

¶ 12 The doctrine of claim preclusion, formerly known at common law as res judicata, teaches that a final judgment on the merits of an action precludes the parties from re-litigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action.[25] When claim preclusion is asserted, the court must analyze the claim dealt with in the prior action to ascertain whether it is in fact the same as that asserted in the subsequent action. In *Retherford v. Halliburton Company*,[26] we defined claim as:

> "a legal concept which has no separate existence in the natural order of things. It is what the makers of legal policy, the Legislature and the courts, say it is. It exists to satisfy the needs of plaintiffs for a means of redress, of defendants for a conceptual context within which to defend an accusation, and of the courts for a framework within which to administer justice."[27]

The claim in *Giger II* was that respondent's petty larceny at the Norman Wal Mart violated the terms of the conditioned probation imposed on respondent in *Giger I*. That was the only claim decided on the merits in *Giger II*. The Bar cannot re-litigate that claim, but it is not barred by the doctrine of claim preclusion from bringing a separate disciplinary proceeding in which we are asked to determine whether the petty larceny incident warrants independent disciplinary sanctions.

¶ 13 The other preclusion doctrine, formerly known at common law as collateral estoppel, is issue preclusion. Under this doctrine, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim.[28] Issue preclusion prevents relitigation of facts and issues *actually litigated and necessarily determined* in an earlier proceeding between the same parties or their privies.[29] An issue is actually litigated and necessarily determined if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.[30] There need not be a judgment on the merits, but only a final determination of a material issue common to both cases.[31] In *Giger II*, the court did not make any finding of fact regarding respondent's actions at the Norman Wal Mart. The Bar is hence not precluded from raising the matter in this proceeding.

¶ 14 We find the evidence presented in this proceeding clear and convincing that respondent committed the offense of petty larceny at the Norman Wal Mart as alleged in count one of the complaint. In *State ex rel. Oklahoma Bar Association v. Bradley*,[32] the court held that a plea of *nolo contendere* is admissible as evidence of a violation of the rules of professional conduct in a proceeding against

criminal proceedings."); *People v. Marmon*, 903 P.2d 651, 652 (Colo.1995); *Florida Bar v. Weed*, 513 So.2d 126, 128 (Fla.1987).

25. *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, ¶ 7, 979 P.2d 252, 255–56; *Miller v. Miller*, 1998 OK 24, ¶ 23, 956 P.2d 887, 896; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.*, 1997 OK 36, ¶ 12, 946 P.2d 662, 667; *Veiser v. Armstrong*, 1984 OK 61, ¶ 8, n. 9, 688 P.2d 796, 800, n. 9.

26. 1977 OK 178, 572 P.2d 966.

27. *Id.* at ¶ 9, at 968. *See also* Allan D. Vestal, PERSONAL INJURY ANNUAL (1969) at V–43.

28. *Ouellette v. State Farm Mutual Automobile Ins. Co.*, 1994 OK 79, ¶ 4, n. 8, 918 P.2d 1363, 1365, n. 8; *National Diversified Business Services, Inc. supra* note 25 at ¶ 11, at 666; *Chambers v. City of Ada*, 1995 OK 24, ¶ 9, n. 5, 894 P.2d 1068, 1072, n. 5; *Wilson v. Kane*, 1993 OK

65, ¶ 8, n. 23, 852 P.2d 717, 722, n. 23; *Veiser v. Armstrong, supra* note 25 at ¶ 8, n. 9, at 800, n. 9. *See also Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1272 (10th Cir.1995) and RESTATEMENT OF JUDGMENTS (SECOND) § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

29. *Nealis v. Baird*, 1999 OK 98, ¶ 51, 996 P.2d 438, 458.

30. *Id.*

31. *National Diversified Business Services, Inc., supra* note 25 at ¶ 13, at 667.

32. *See supra* note 22.

a member of the Bar.[33] Giger filed a response to the Bar's complaint as required by RGDP Rule 6.4,[34] but he neither admitted nor denied that he pled *nolo contendere* to the petty larceny charge. RGDP Rule 6.4 provides that failure to answer a complaint constitutes an admission of the charges,[35] but it is not clear from the language of the rule whether the failure to deny a specific allegation, as distinct from a complete failure to respond, constitutes under the rule an admission of the uncontroverted allegation. Yet, it is unnecessary for us to determine whether Rule 6.4 reaches a respondent's failure to deny a specific allegation in a bar complaint. This is so because the rules of civil procedure, which apply to bar disciplinary proceedings, clearly extend to that eventuality. The provisions of 12 O.S.2001 § 2008(D) state that failure to deny an averment in a pleading to which a responsive pleading is required, other than those as to the amount of damages, results in the admission of the uncontroverted averment. Respondent's admission by omission to deny provides the necessary proof that respondent pled *nolo contendere* to the petty larceny charge. Under the *Bradley* rule, the plea constitutes clear and convincing evidence that respondent violated the rules of professional conduct.

¶ 15 Even if the *nolo contendere* plea were not admissible or not sufficient in and of itself to prove the Bar's allegations, we would nevertheless find from this record sufficient evidence that respondent committed the alleged petty larceny. Respondent does not deny that he took the batteries off the shelf, put them in his pocket, and left the store without paying for them. His defense is that he did so inadvertently. We are not persuaded. One does not enter a store, remove a product from its packaging, discard the packaging, and place the item in one's clothing in the absence of an intent to abscond with the merchandise.

¶ 16 We find that respondent's conduct violated the provisions of ORPC Rule 8.4(b), ORPC Rule 8.4(c), and RGDP Rule 1.3. The trial panel recommended that we impose no discipline for this infraction given that respondent is already serving a two-year-and-one-day suspension. We cannot accede to this recommendation without having it appear that we view shoplifting to be of little consequence. We do not. Shoplifting, even when the items stolen are of little value, is harmful to society. When one engages in such misconduct, it indicates psychological or emotional problems or a lack of respect for the law, or both. For a lawyer, neither mental state is acceptable. In light of respondent's current suspended status, we believe a public censure suffices to vindicate the interests we are sworn to protect. Because he has already been suspended for two years and one day in *Giger II*, respondent must apply for reinstatement if he is to practice law again.[36] At that time he will have to

33. *Id.* at ¶ 22, at 1134. A *nolo contendere* plea is generally not admissible against the person who made it in a later civil action or criminal proceeding, 12 O.S.2001 § 2410.A.2. and 22 O.S. 2001 § 513, nor is evidence of a judgment entered upon a plea of *nolo contendere* admissible as an exception to the hearsay rule. *See* 12 O.S.2001 § 2803.22. In *Bradley* the court held that the nature and purpose of a bar disciplinary proceeding calls for a less restrictive rule on the admission of a *nolo contendere* plea in proceedings against a member of the Bar. In contrast, a felony judgment entered upon a plea of guilty, which is no longer subject to appellate review, is admissible, 12 O.S.2001 § 2803.22., and a guilty plea would be admissible as an admission against interest. *Laughlin v. Lamar*, 1951 OK 330, ¶ 5, 237 P.2d 1015, 1016.

34. The pertinent provisions of RGDP Rule 6.4, 5 O.S.2001 Ch. 1, App. 1–A, state:
"The respondent shall within twenty (20) days after the mailing of the complaint file an an-

swer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. *In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.*" (emphasis added).

35. *Id.*

36. A suspension from the practice of law for two years and one day is tantamount to disbarment. *See* the provisions of RGDP Rule 11.1, 5 O.S. 2001 Ch. 1, App.1–A. In order to be reinstated, a lawyer suspended for that period of time must follow the readmission procedure for disbarred lawyers. That procedure, set forth in the provisions of RGDP Rule 11.4, 5 O.S.2001 Ch. 1, App. 1–A., entails the following:

"An applicant for reinstatement must establish affirmatively that, if readmitted or if the sus-

persuade us that he possesses the good moral character that would entitle him to reinstatement as a member of the Bar, that he is free of the impairments indicated by the commission of this petty crime, and that he is again fit to practice law.

## IV

### COUNT TWO OF THE COMPLAINT IS DISMISSED WITHOUT PREJUDICE

¶ 17 The Bar alleges in count two of the complaint that respondent engaged in some very serious acts of misconduct which, if true, constitute both criminal offenses as well as ethical breaches. The Bar was not prepared to offer evidence at the PRT hearing substantiating the allegations and indicated that it would dismiss the count were that course of action open to it. Two members of the trial panel recommended that the count be dismissed, while the remaining trial panel member recommended that the hearing on count two be continued until such time as the Bar is prepared to present its case.

¶ 18 The provisions of RGDP Rule 6.15 govern the court's options in disposing of a disciplinary proceeding. They permit the court to "impose discipline, dismiss the proceedings or take such other action as it deems appropriate." We decline to order the hearing on count two continued in the absence of a properly formulated request by

the Bar to do so.[37] Because of the gravity of the allegations made against respondent in this count, **we dismiss it without prejudice to its refiling** should proof that he engaged in the alleged misconduct become available.

## V

### SUMMARY

¶ 19 The Bar has charged respondent with two counts of professional misconduct. We find clear and convincing evidence that respondent committed the offense of petty larceny from a Norman Wal Mart in violation of ORPC Rule 8.4(b), ORPC Rule 8.4(c), and RGDP Rule 1.3. In the circumstances of this case the appropriate disciplinary sanction for respondent's misconduct is a public censure. We determine that the Bar failed to prove the allegations in count two of the complaint and order that count dismissed without prejudice to its refiling should proof of the alleged misconduct become available.

¶ 20 **RESPONDENT IS ORDERED DISCIPLINED BY A PUBLIC CENSURE FOR THE MISCONDUCT ALLEGED IN COUNT ONE OF THE COMPLAINT; COUNT TWO OF THE COMPLAINT IS DISMISSED WITHOUT PREJUDICE.**

¶ 21 **ALL JUSTICES CONCUR.**

pension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules."

37. The provisions of RGDP Rule 6.12 recommend that disciplinary proceedings shall be generally governed, as far as is practicable, by the rules applicable to civil proceedings. The provisions of 12 O.S.2001 § 667 permit a trial court to continue an action at any stage of the proceedings for good cause shown. The provisions of 12 O.S.2001 § 668 provide that where the reason for a continuance is the absence of evidence, the party requesting a continuance must file a *written motion* which must be *accompanied by an affidavit. Where the motion is based on an absent witness, the affidavit must show where the witness resides, if his residence is known, and the probability of procuring his testimony within a reasonable time.* The Bar **did not request a continuance orally or in writing** and indicated that it has no prospect of obtaining the testimony of any witness to the events giving rise to the allegations in count two.