OSCN Found Document:O'BRIEN v. BERRY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 O'BRIEN v. BERRY
2016 OK CIV APP 28
Case Number: 113216
Decided: 03/28/2016
Mandate Issued: 04/26/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 28, __ P.3d __

 

SHERRINE LYNN O'BRIEN, Petitioner/Appellee,
v.
CHRIS ALLEN BERRY, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
LINCOLN COUNTY, OKLAHOMA

HONORABLE DAWSON ENGLE, TRIAL JUDGE

AFFIRMED

James J. Hodgens, JAMES J. HODGENS, PC, Stroud, Oklahoma, for Petitioner/Appellee
Joseph M. Vorndran, George Wright, STUART & CLOVER, PLLC, Shawnee, Oklahoma, for Defendant/Appellant

JOHN F. FISCHER, JUDGE:

¶1 Chris Allen Berry appeals an order of protection issued pursuant to the Protection from Domestic Abuse Act, 22 O.S.2011 & Supp. 2013 §§ 60 to 60.20, in favor of Sherrine Lynn O'Brien. Berry argues that O'Brien failed to prove an act of domestic abuse required to obtain an order of protection, that the district court erred in refusing to admit certain exhibits he offered during the trial and the district court's order is precluded by a ruling in his favor on the same matter issued by the tribal court in which O'Brien first filed for a protective order. Berry has failed to show an abuse of discretion by the district court, and we affirm.

BACKGROUND

¶2 O'Brien and Berry had been living together for approximately fourteen months in what the district court described as a "domestic intimate relationship." On the morning of July 20, 2014, the parties were involved in a physical altercation, one of several during the time the parties were together. O'Brien left Berry's home after the altercation and stayed in lodging provided by the House of Hope. She moved out of Berry's home the following day.

¶3 O'Brien filed an application for a protective order in the District Court of the Citizen Potawatomi Nation on July 25, 2014. A "show cause" hearing was held four days later. At the conclusion of that hearing, the tribal judge declined to issue an emergency protective order and set the matter for trial on August 26, 2014. O'Brien voluntarily dismissed her tribal court action on August 5, 2014.

¶4 On August 11, 2014, O'Brien filed this action. The matter was tried and district court found that O'Brien had met her burden of proof. Berry appeals the protective order issued on that date.[1]

 

STANDARD OF REVIEW

 

¶5 Orders issued pursuant to proceedings invoking the Protection from Domestic Abuse Act are reviewed for an abuse of discretion. Curry v. Streater, 2009 OK 5, 213 P.3d 550.

Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law. State ex rel. Tal v. Oklahoma City, 2002 OK 97, ¶ 3, 61 P.3d 234, 240. To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence. Oklahoma Tpk. Auth. v. Little, 1993 OK 116, ¶ 6, 860 P.2d 226, 228.

Id. ¶ 8.

ANALYSIS

¶6 The evidence produced at trial was conflicting. O'Brien testified that on the morning of July 20, she was at home after working the night shift at the casino where she was employed as a security guard. She had a couple of drinks before Berry returned home from the night shift he worked as a police officer for the Citizen Potawatomi Nation. They had one drink together, and then O'Brien went to bed. She testified that she woke up because Berry was screaming her name. She realized he was very angry, so she pretended she was still asleep. According to O'Brien, Berry threw her out of the bed, dragged her to the bathroom skinning her knees, stood on her foot cutting her ankle, put her in the shower and turned on the cold water. When she attempted to leave the house, Berry blocked her path and choked her, causing bruising to her throat and chest. Eventually, Berry called neighbors, who took O'Brien, at her request, to the casino where she worked. O'Brien also testified that she filed a police report regarding the incident and, after she moved out, Berry had come to her place of work and stood nearby trying to intimidate her.

¶7 Berry appeared pro se at the hearing. He testified that after he and O'Brien had one drink together, she went to the bedroom, where he found her lying on the floor next to the bed and unresponsive. Berry testified that he believed O'Brien was having a reaction to the antidepressant medication she was taking, which was brought on by her "heavy drinking," and that she might have "poisoned herself." He claimed he tried to revive her, and when he was not successful he put her in the shower and then phoned the sheriff's department, but the department would not send over a deputy. However, Berry's testimony also revealed that he informed the sheriff's department that he "had a domestic situation," and did not mention any medical emergency involving O'Brien. Based on the information Berry provided during that phone call, the sheriff's department advised him "to go get an eviction notice." On cross-examination, Berry testified that he did not call 911, contrary to his training as a "first responder." He testified that when O'Brien "finally came to" she started screaming that she wanted to leave. He called the next door neighbors, who came to his home and took O'Brien with them.

¶8 Both neighbors and Berry's son also testified. These witnesses generally supported some aspects of Berry's version of the incident. They also supported aspects of O'Brien's testimony, including the injury to her knees. However, because none of these witnesses had any personal knowledge of the actual altercation between O'Brien and Berry, they were not able to testify regarding any details of the incident. The district court found that O'Brien had "met her burden of proof" and granted her request for a protective order.

I. What Constitutes Domestic Abuse

¶9 Berry's appeal raises various arguments. He argues that O'Brien failed to prove by "clear and convincing evidence" that she was physically harmed. Berry has not cited any authority supporting his contention that O'Brien was required to prove domestic abuse by clear and convincing evidence. We find nothing in the Protection from Domestic Abuse Act, or any case interpreting the Act, imposing this heightened burden of proof on O'Brien. The focus of Berry's argument, however, is on the evidence required to prove "domestic abuse," and raises an issue not previously decided: What constitutes domestic abuse resulting from physical harm for purposes of the Protection from Domestic Abuse Act?[2] As relevant to this case, "domestic abuse" is defined as "any act of physical harm . . . which is committed by an adult . . . against another adult . . . who are or were in a dating relationship." 22 O.S.2011 § 60.1(1). "A victim of domestic abuse . . . may seek relief under the provisions of the Protection from Domestic Abuse Act." 22 O.S. Supp. 2013 § 60.2.

A. Evidence Necessary to Prove Physical Harm

¶10 Berry argues that this Court has previously declined to define "physical harm" as that term is used in the Act. See Marquette v. Marquette, 1984 OK CIV APP 25, 686 P.2d 990 (holding the Act is civil, not criminal in nature and refusing to adopt the beyond-a-reasonable-doubt burden of proof applicable in criminal cases). Berry's reliance on Marquette is misplaced for two reasons. First, the Marquette Court did not refuse to define "physical harm." It merely refused to adopt a "'blood and guts' interpretation" of the statutory language. Id. ¶ 12. Second, the version of the statute at issue in Marquette differs from the version of the statute applicable in this case. No longer is a plaintiff required to prove "serious physical harm" in order to obtain an order of protection, as was required when Marquette was decided. See 22 O.S. Supp. 1983 § 60.1. An order of protection is now authorized on proof of "any act of physical harm." 22 O.S.2011 § 60.1(1).

¶11 Berry relies on photographs taken of O'Brien the day of the incident.[3] He contends these photographs show minimal injuries to O'Brien. It does not matter that O'Brien received only "minor injuries" as Berry contends. Berry engaged in domestic abuse if he caused "any act of physical harm." The fact that the Legislature amended the Protection from Domestic Abuse Act to delete the requirement for proof of "serious injury" fully addresses Berry's argument. Where, as here, the Legislature amends a statute that "expresses a clear and unambiguous intent . . . [the] legislative amendment is presumed to change the existing law." Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 13, 33 P.3d 302. Pursuant to the applicable statute in this case, domestic abuse is shown by evidence of "any act of physical harm" whether or not the perpetrator deems the harm serious.

B. Intent to Harm

¶12 Next, Berry argues that even though O'Brien might have suffered some physical harm, he did not intend to harm her, and any harm she sustained was either self-inflicted or incidental to his efforts to revive her when he found her unresponsive. He contends we should adopt the tort of battery definition of intent or the "willful" and "unlawful" use of force or violence elements required to prove the crime of domestic abuse. See 21 O.S.2011 § 644(C) and Oklahoma Uniform Jury Instructions - [OUJI] Criminal No. 4-26A. The Protection from Domestic Abuse Act authorizes an order of protection on proof of: (1) domestic abuse, (2) stalking or (3) harassment. "Stalking" and "harassment" are both defined in the Act in terms of willful, malicious and knowing conduct. 22 O.S.2011 § 60.1(2) and (3). No similar language appears in the definition of domestic abuse. Nonetheless, we find that the Act requires some element of intent.

¶13 First, we note that the Supreme Court reached this conclusion in determining "the elements of domestic abuse by threat of imminent harm under the Act." Curry v. Streater, 2009 OK 5, ¶ 14. The Court found that "[a] threat is '[a]n expression of an intention to inflict' . . . imminent physical harm" or a 'communicated intent to inflict physical or other harm on any person or on property.'" Id. ¶ 15 (quoting American Heritage Dictionary 1265 (2nd coll. ed. 1976), and Black's Law Dictionary 1327 (5th ed. 1979)). It would be absurd to require proof of intent to threaten harm but not proof of intent to actually physically harm, particularly when those two actions appear in the same definition of domestic abuse. See Ledbetter v. Okla. Alcoholic Beverage Laws Enforcement Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172 (statutory construction that would lead to an absurdity must be avoided). Further, exempting acts of physical harm from the intent required to prove all other acts authorizing an order of protection (i.e., threats of harm, stalking and harassment) is antithetical to a consistent construction of the Act. See Okla. Ass'n for Equitable Taxation v. City of Oklahoma City, 1995 OK 62, ¶ 5, 901 P.2d 800 (legislative intent is ascertained from the whole act based on its general purpose and objective and construing relevant provisions together to give full force and effect to each).

¶14 In the absence of a statutory definition, we look to the ordinary meaning of the phrase "any act of physical harm" as did the Supreme Court in Curry. As relevant here, an "act" is "the process of doing or performing" or "the external manifestation of [a person's] will." Black's Law Dictionary 24-25 (7th ed. 1999). For context, we look to the meaning of "abuse," which is also defined as an intentional act, e.g., "[p]hysical or mental maltreatment." Id. at 10. We find that the element of intent required in cases of civil battery best defines the level of intent required to prove an act of domestic abuse. "A person intends to commit a battery if [he/she] acts for the purpose of making a [harmful/offensive] contact with another." OUJI-Civil No. 19.8.

C. O'Brien's Physical Harm

¶15 Berry did not object when O'Brien introduced photographs of her injuries taken three days after the incident. Berry did not include the photographs O'Brien introduced in this appellate record. However, the transcript of O'Brien's trial testimony reflects her description of injuries to her arm, chest, throat, ankle and knees as depicted by those photographs. Therefore, we must assume O'Brien's photographic exhibits are representative of the injuries O'Brien described during her trial testimony. "The appellant bears the total responsibility for including in the appellate record all materials necessary to secure corrective relief." Hamid v. Sew Original, 1982 OK 46, ¶ 6, 645 P.2d 496. The injuries O'Brien described are consistent with her version of the altercation and the physical harm Berry inflicted. Even the photographs that Berry claims the district court erroneously excluded confirm injury to O'Brien's knees, ankle and throat.

¶16 Nonetheless, Berry argues that the injuries O'Brien described are consistent with his claim that her injuries resulted from an accidental slip and fall on the linoleum floor as she was running from the shower, or were incidental to his efforts to revive her. Berry argues that the "question before this Court is whether [O'Brien] established that she was subjected to domestic abuse through physical harm by Berry." That is not the question. We may not re-weigh the evidence or substitute our findings for those of the district court. Curry v. Streater, 2009 OK 5, ¶ 17. The issue of Berry's intent regarding his physical contact with O'Brien on July 20, 2014, was squarely before the district court. Although the testimony of O'Brien and Berry differed regarding how O'Brien's injuries occurred, the rule is "well established" that the district court was in the best position to determine their credibility. Taylor v. Taylor, 1963 OK 263, ¶ 15, 387 P.2d 648. After hearing the testimony of all the witnesses and viewing all of the evidence, the district court granted O'Brien's request for a protective order. We have reviewed the evidence in the appellate record and find that the district court's conclusion that Berry committed domestic abuse is not "clearly erroneous, [or] against reason and evidence." Oklahoma Tpk. Auth. v. Little, 1993 OK 116, ¶ 6.[4]

 

II. The Preclusion Argument

 

¶17 Berry asserts in his final argument that the district court's order is precluded by the favorable ruling he obtained in the Citizen Potawatomi Nation District Court. Relying on the doctrine of issue preclusion, he contends that O'Brien actually litigated her entitlement to a protective order in tribal court and therefore was barred from relitigating that issue here. "[O]nce a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." State ex rel. Oklahoma Bar Ass'n v. Giger, 2004 OK 43, ¶ 13, 93 P.3d 32 (footnote omitted). Clearly, the injuries O'Brien received on July 20, 2014, were the subject of her Petition for Protective Order filed in the tribal court. However, that petition sought to invoke the protection of the Violence Against Women Act, 18 U.S.C. § 2265. Berry has not shown that the federal law and Oklahoma's Protection from Domestic Abuse Act are sufficiently identical, requiring a finding that the legal issues O'Brien raised in the district court were "actually adjudicated" in tribal court. Carris v. John R. Thomas and Assocs., P.C., 1995 OK 33, ¶ 11, 896 P.2d 522.

¶18 Further, Berry mischaracterizes the effect of the tribal court's ruling as declining to grant O'Brien a protective order "on the merits." The tribal court heard evidence at a "show cause" hearing conducted on July 29, 2014. At the conclusion of that hearing, the tribal court denied what Berry described as O'Brien's request for an emergency protective order, and then set the matter for "an evidentiary hearing" on August 26, 2014. Although there need not be a final judgment on the merits of the case for issue preclusion to apply, there must be "a final determination of a material issue common to both cases." Giger, 2004 OK 43, ¶ 13 (footnote omitted). Berry has not shown, as is his burden, that the tribal court's ruling determined the action, prevented a judgment in favor of O'Brien or possessed the finality required to invoke issue preclusion. Cf., Nat'l Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc., 1997 OK 36, ¶ 13, 946 P.2d 662 (final order as defined in 12 O.S.2011 § 953 will preclude relitigation of issues encompassed in that order). In fact, it is apparent from this limited record that, at the show cause hearing in the tribal court proceeding, no final determination was made on O'Brien's ultimate entitlement to a protective order. And it is undisputed that O'Brien dismissed her tribal court action before that final determination could be made at the later scheduled evidentiary hearing. Absent a final determination of the right to a protective order, O'Brien was "free to abandon the course then in pursuit [and] to relaunch or press the same claim along a different remedial track." Id. That is the course of action she chose.

CONCLUSION

¶19 The applicable version of the Protection from Domestic Abuse Act requires proof of "any act of physical harm" to establish domestic abuse. The seriousness of the injury or harm is not the determining factor. However, the defendant must act for the purpose of making the harmful contact. The district court's conclusion that Berry did so in this case is not against the clear weight of evidence in this record and does not constitute an abuse of discretion. Further, Berry has not demonstrated that the district court's protective order was precluded by the proceedings in the Citizen Potawatomi Nation District Court. The district court's August 21, 2014 Order of Protection is affirmed.

¶20 AFFIRMED.

GOODMAN, C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] O'Brien did not appear or file an answer brief in this appeal. "Where there is an unexcused failure to file an answer brief, this Court is under no duty to search the record for some theory to sustain the trial court judgment; and where the brief in chief is reasonably supportive of the allegations of error, this Court will ordinarily reverse the appealed judgment with appropriate directions." Cooper v. Cooper, 1980 OK 128, ¶ 6, 616 P.2d 1154; Okla. Sup. Ct. R. 1.10, 12 O.S. Supp. 2013, ch. 15, app. 1. However, "[r]eversal is never automatic on a party's failure to file an answer brief." Enochs v. Martin Props., Inc., 1997 OK 132, ¶ 6, 954 P.2d 124 (footnote omitted). If "the record presented fails to support the error alleged in the brief of the party who lost below, the decision to be reviewed cannot be disturbed. It is presumed correct until the contrary is shown by the record." Id. For the reasons stated in this Opinion, we find that Berry has failed to show that the district court's order of protection was incorrect.

[2] In Curry v. Streater, 2009 OK 5, 213 P.3d 550, the Supreme Court construed the provision of the Protection from Domestic Abuse Act concerned with the aspect of the definition of domestic abuse resulting from "threats of imminent physical harm." 22 O.S.2011 § 60.1(1). The basis of the district court's order of protection in this case was the finding of actual "physical harm," the second aspect of the definition of domestic abuse. Id.

[3] Berry offered these exhibits during his case in chief but did not lay the foundation necessary to authenticate the photographs, and the district court sustained O'Brien's objection "at this time." Berry also offered a copy of what he claimed to be the "warning label" on medication O'Brien had been prescribed. Admission of this exhibit was also denied for lack of a foundation. Berry made no effort thereafter to correct the lack-of-foundation issue regarding these exhibits or properly authenticate either exhibit. The district court admitted all the other exhibits Berry offered at the hearing. Berry now argues that the district court erred in refusing to admit his warning label and photograph exhibits. Absent a showing that the exclusion of these exhibits affected a "substantial right" or was so prejudicial that it resulted in a "different" outcome, Berry cannot prevail on this issue. See State ex rel. Dep't of Transp. v. Caliber Dev. Co., LLC, 2016 OK CIV APP 1, ¶¶ 23; 24, ___ P.3d ___ (approved for publication by the Supreme Court). Berry has made no such showing. See Funnell v. Jones, 1985 OK 73, ¶ 4, 737 P.2d 105 (pro se litigants are generally held to the same standards as an attorney).

[4] For this reason, we also find that Berry is not entitled to a "good Samaritan" or "rescue doctrine" defense.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2016 OK CIV APP 1, STATE ex rel. DEPT. OF TRANSPORTATION v. CALIBER DEVELOPMENT CO. LLC
Cited
 1984 OK CIV APP 25, 686 P.2d 990, Marquette v. Marquette
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1993 OK 116, 860 P.2d 226, 64 OBJ 2879, Oklahoma Turnpike Authority v. Little
Discussed at Length
 1997 OK 36, 946 P.2d 662, 68 OBJ 1167, National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1963 OK 263, 387 P.2d 648, TAYLOR v. TAYLOR
Discussed
 1995 OK 33, 896 P.2d 522, 66 OBJ 1239, Carris v. John R. Thomas and Associates, P.C.
Discussed
 1995 OK 62, 901 P.2d 800, 66 OBJ 2037, Oklahoma Assn. for Equitable Taxation v. City of Oklahoma City
Discussed
 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed
 2004 OK 43, 93 P.3d 32, STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed at Length
 2009 OK 5, 213 P.3d 550, CURRY v. STREATER
Discussed at Length
 1980 OK 128, 616 P.2d 1154, Cooper v. Cooper
Discussed
 1997 OK 132, 954 P.2d 124, 68 OBJ 3523, ENOCHS v. MARTIN PROPERTIES, INC
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
 1985 OK 73, 737 P.2d 105, Funnell v. Jones
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 953, Final Order Defined
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 644, Punishment for Assault and Battery
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 60, Short Title
Cited
 22 O.S. 60.1, Definitions
Discussed at Length
 22 O.S. 60.2, Protective Order - Petition - Form - Filing Fee - Preparation - Protection of Animal
Cited