2007 OK 39

**OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, Petitioner/Appellant,**

v.

**Rodney McCRADY and the Oklahoma Merit Protection Commission, Respondents/Appellees.**

No. 101,210.

Supreme Court of Oklahoma.

May 22, 2007.

As Corrected on Denial of Rehearing Sept. 17, 2007.

Kevin L. McClure, Oklahoma Department of Public Safety, Oklahoma City, OK, for Appellant.

James R. Moore, Chanda R. Graham, Oklahoma City, OK, for Appellee.[1]

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. The facts underlying today's certiorari preceded a host of litigation. For a list of the proceedings initiated by these events, see *McCrady v. Oklahoma Department of Public Safety*, 2005 OK 67, n. 1, 122 P.3d 473, n. 1.

3. McCrady initially was discharged for, *inter alia,* using his position to obtain confidential information about another party and making statements to that party with the intent to put him in fear of physical harm. Before this incident he received a letter of reprimand for misconduct in 1978.

4. 2001 OMPC order, p. 15. Although McCrady's position was that of first lieutenant, this order refers to McCrady as a second lieutenant. The 2003 OMPC order references this as a mistake and employs the term "sic" in its quote from the earlier order. In its appellate brief DPS urges this is not a mistake and requests that the back pay awarded earlier be recalculated based on this lower-rank status. We do not address the parties' assertions in the text of this opinion. Although the terms of the 2001 order referenced the rank of second lieutenant, it also reinstated him to his "prior position." This reference to McCrady as a second lieutenant was clearly a

OPALA, J.

¶ 1 The question presented on certiorari is **whether the Court of Civil Appeals erred** when it vacated the district court decision that affirmed the Oklahoma Merit Protection Commission's order? **We answer in the affirmative.**

### I.

### THE ANATOMY OF LITIGATION

¶ 2 Today's certiorari deals with the second dismissal of Oklahoma highway patrol trooper Rodney McCrady (McCrady or petitioner) from the Oklahoma Department of Public Safety (DPS or respondent).[2]

¶ 3 McCrady, a first lieutenant, had been employed by DP1S for approximately seventeen years when he was first discharged from the agency in 1995.[3] In June 2001 a hearing officer (administrative law judge or ALJ) for the Oklahoma Merit Protection Commission (OMPC) issued an order reinstating McCrady "to his prior position of Second Lieutenant with full back pay and benefits."[4] That order permitted DPS to impose upon him "a 60–day suspension without pay and a twelve-

mistake and noted by the ALJ in her 2003 order. According to McCrady's appellate brief, upon his reinstatement to DPS in accord with the 2001 order, he was paid the salary due a first lieutenant (appellee's reply brief, p. 13). DPS did not timely raise this issue. Moreover, it did not dispute McCrady's status as a first lieutenant in *McCrady I. See infra* Part II and note 24.

The procedural history dealing with today's certiorari is complex. Although the district court affirmed the original 1995 OMPC order dismissing McCrady, COCA, on appeal, held he did not receive a fair and impartial hearing. The ALJ, upon rehearing, ordered DPS to reinstate McCrady with back pay and benefits (2001 order). DPS appealed and the district court affirmed the order. COCA reversed the order and remanded the cause to the district court with directions to dismiss the appeal because the order did not determine the amount of back pay and hence was not an appealable order (COCA opinion, record on appeal, pp. 15–23). It was during pendency of this appeal that McCrady was discharged for the second time. The ALJ issued her order on 25 April 2003, reinstating McCrady "with back pay and benefits" and reducing the discipline imposed on him. The OMPC denied DPS's petition for reconsideration. Pending the appeal of this order, the parties made a joint motion to remand this cause to the OMPC for determination of back pay. The mo-

month probationary period ... during which time he may not violate any rules, policies or procedures of DPS or State law." [5] McCrady returned to work on 10 September 2001. DPS alleges that during this one-year period McCrady violated the terms of his probation.[6] He received a pre-termination hearing and was dismissed on 2 October 2002.[7]

¶4 McCrady lodged an appeal from his discharge to the OMPC.[8] DPS urged the hearing officer was without jurisdiction to entertain the appeal because McCrady, a probationary employee, has no right to appeal from this decision and is subject to discharge without cause.[9] The ALJ disagreed and ruled (1) the twelve-month "disciplinary probation" provision of the 2001 order did not strip McCrady of the rights that were granted him by the reinstatement-i.e., his permanent classified employee status and the cluster of protections this position affords-and (2) McCrady violated the provisions of his probation, but the discipline visited upon him for these infractions was excessive when compared to that levied in similar cases.[10] The hearing officer ordered McCrady to be reinstated to his prior posi-

tion was granted and the ALJ determined the amount of back pay in her 26 January 2004 order. The orders were consolidated on appeal. The district court affirmed both orders. In its opinion COCA addressed only the reinstatement issue.

Although we note the record does not reflect whether the ALJ's 26 January 2004 order (dealing with back pay) was reviewed by the commission *en banc*, we assume from the parties' lack of a complaint that it has.

5. OMPC 2001 order, p. 15.

The record reveals that DPS reported McCrady's probationary status to the Office of Personnel Management. The document titled "request for personnel action" offers several probationary options including: "initial probationary," "reinstatement: probationary," and "reinstatement: permanent." The "reinstatement: probationary" box was checked. The second page of the document, where McCrady's signature appears, provides, "I have also been informed that I will be serving a 12 month probationary period."

6. DPS alleges it received complaints about McCrady following his reinstatement, including his use of a patrol vehicle on different occasions for transporting private citizens for personal purposes. On 8 July 2002 a Disciplinary Review Board recommended that McCrady receive a letter of reprimand for the misuse of a state vehicle. Other allegations, while found to be true, were determined to be beyond the scope of the agency's jurisdiction. On 8 August 2002 a citizen complaint alleged a patrol car (later identified as McCrady's) was being driven recklessly.

7. On 10 September 2002, DPS filed a document entitled "Petition/Motion to Set Aside Final Order for Violation of the Terms and Conditions of MPC Final Order Filed June 8, 2001." The hearing officer denied this petition *sua sponte*.

McCrady was given a pretermination hearing on 23 September to determine whether mitigating circumstances existed for his alleged infractions. According to the DPS letter of termination, none was offered (record on appeal, p. 235, letter of termination).

On 2 October DPS delivered a letter to McCrady notifying him of termination of his em-

ployment. The allegations against him included using his state vehicle for personal use (transporting private citizens), reckless driving, and attending a personal court matter while in uniform, in violation of the terms of 47 O.S.2001 § 154 and § 156.1; 74 O.S.2001 § 585; and Oklahoma Highway Patrol (OHP) Operations Manual 1.2.3.(B)(43); 4.1.1; 4.2.1; 4.2.5; 1.2.3.B.21, 27, 47, and 3.18.2.

8. DPS's letter, notifying McCrady of his employment termination, specified McCrady, as a probationary employee, had no right to appeal from this decision in accordance with the terms of the Oklahoma Administrative Code (OAC), Merit System of Personnel Administration Rules. The terms of OAC 530:10–11–32 provide: *"The probationary appointment of any person may be terminated at any time during the probationary period without the right of appeal [74:840–4.13(C) ]."* McCrady, nevertheless, appealed from this discharge.

In his OMPC paperwork entitled "Petition for Appeal" McCrady alleges violations of the following provisions of the Oklahoma Personnel Act (OPA): 74 O.S.2001 §§ 840–2.5, 840–6.2(c), 840–6.3, 840–6.4. (record on appeal, p. 232) Because McCrady does not cite to any amended provisions, we assume he references the terms of the 2001 statutory compilation.

9. For the terms of OAC 530:10–11–32, see *supra* note 8.

10. According to the text of the ALJ's order McCrady did not deny the facts alleged by DPS but asserts: 1) that he was unaware that driving his state vehicle for personal use was in violation of agency policies; 2) the discipline imposed upon him was unjustified based on discipline levied in prior similar cases; and 3) his termination was an attempt to circumvent his earlier reinstatement and back-pay award. The ALJ ruled it was unnecessary to determine DPS's motivation for discharging him a second time because it had shown by a preponderance of the evidence that McCrady violated state statutes and DPS policies when he: 1) used his patrol vehicle

tion of first lieutenant with full back pay and benefits less a five (5) day suspension without pay.[11] DPS appealed. The commissioners (of OMPC) denied the request for reconsideration and the Oklahoma County district court affirmed the order.[12]

¶5 The Court of Civil Appeals (COCA) vacated the district court's order with directions that the OMPC proceeding, instituted by McCrady, be dismissed. Its opinion held McCrady is a **probationary employee whose employment is subject to termination with no right of appeal** in accordance with the terms of the Oklahoma Administrative Code (OAC) by Merit System of Personnel Administration.[13] Before COCA's opinion was released, *McCrady v. Oklahoma Department of Public Safety*[14] (to be known here as *McCrady I*) was decided. That cause, which was based upon the same facts as those in today's certiorari, was brought by McCrady as a tort action and filed after the

for personal use; 2) engaged in erratic driving; and 3) appeared in court on a personal matter while in his uniform. Her order further concluded DPS failed to show that the discipline imposed on him was just under the circumstances (2003 order, pp. 4–8).

11. The ALJ set the amount of back pay and benefits in her 26 January 2004 order. See *supra* note 4 for the procedural history of today's certiorari.

12. In support of its argument—that McCrady, a probationary employee, could be dismissed without the right of appeal—DPS relies upon the terms of the OAC's Merit System of Personnel Administration Rules. The terms of OAC 530:10–11–30(c) provide:

(c) An employee on an original probationary appointment with the agency or any adjustment of the original probationary appointment, *or on a probationary period with the agency after reinstatement*, or an adjustment of such a probationary period may be released or dismissed in accordance with 530:10–11–32 (emphasis supplied).

For the terms of OAC 530:10–11–32 see *supra* note 8.

McCrady urges, *inter alia*, that he may appeal from his discharge because he was a permanent classified employee who is entitled to the due process protections afforded him in accordance with the provisions of the OPA, 74 O.S.2001 §§ 840–1.1 et seq. and that of 47 O.S.2001 § 2–105 (C)(1), the latter whose terms govern highway patrol personnel. McCrady contends those provisions of the OAC cited by DPS refer solely to those employees initially hired by an agency.

last OMPC hearing. *McCrady I* teaches McCrady is a classified employee, not an at-will employee, and hence may not bring a tort claim for wrongful discharge based on the public-policy exception to the employment-at-will rule.[15] McCrady petitioned COCA for rehearing, urging its opinion conflicts with the teaching of *McCrady I*. Upon rehearing COCA's opinion remained unchanged but this time it provided there was no conflict with the terms of *McCrady I*.[16] He sought certiorari.

## II.

## McCRADY'S EMPLOYMENT STATUS AS A PERMANENT CLASSIFIED EMPLOYEE STANDS SETTLED AND PROTECTED FROM RELITIGATION BY THE DOCTRINE OF ISSUE PRECLUSION

¶6 Although DPS now abandons its earlier argument-that McCrady is a proba-

13. For the pertinent provisions of the OAC, see *supra* note 8 and *supra* note 12.

14. *McCrady v. Oklahoma Department of Public Safety, supra* note 2.

15. The issue decided in this cause dealt with whether McCrady may be considered an at-will employee and hence able to bring an action in tort for wrongful termination from employment in accordance with the pronouncement in *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24.

16. COCA's rehearing opinion reveals that the terms of *McCrady I* held that he was a classified employee (COCA opinion, p. 13). COCA reasoned the court in *McCrady I* equated non-classified state employees with at-will employees. Neither party, according to COCA, has suggested that McCrady was an unclassified employee. Likewise, all employment actions were taken in accordance with the OMPC rules, including the probationary status within that system. COCA's opinion does not hence conflict with the ruling in *McCrady I*—that he was not an at-will employee (COCA opinion on rehearing, p. 14).

In support of its decision, COCA relies on the teaching of *Oklahoma Employment Security Com'n v. Oklahoma Merit Protection Com'n*, 1995 OK CIV APP 76, 900 P.2d 470. That cause dealt with a different provision of the OAC. It teaches a permanent classified employee who is promoted to a supervisory position but who later returned to her former position for failing to adequately perform the duties required in a new job had no right to appeal her cause, and the Commission committed error in assuming jurisdiction over it.

tionary employee-we address this issue to provide more clarity by adding a pedagogical perspective to today's pronouncement. COCA's opinion—declaring its ruling does not conflict with the teaching of *McCrady I*—is incorrect. We accord conclusive significance, not so much to DPS's change in advocacy, but to our own obedience to the legal doctrine of issue preclusion.[17] **COCA did not in this case give due effect to McCrady's adjudicated status in** *McCrady I.*

¶ 7 In accordance with the doctrine of issue preclusion (previously known as collateral estoppel),[18] once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim.[19] The principle of issue preclusion operates to bar from relitigation both correct and erroneous resolutions of jurisdictional and nonjurisdictional challenges.[20] An issue is actually litigated and necessarily determined if it is properly raised in the pleadings, or otherwise submitted for determination, and judgment would not have been rendered but for the determination of that issue.[21] The doctrine may not be invoked if the party against whom the earlier decision is interposed did not have a "full and

fair opportunity" to litigate the critical issue in the previous case.[22] For invocation of issue preclusion there need not be a prior adjudication on the merits (as is often the case with res judicata) **but only a final determination of a material issue common to both cases.**[23]

¶ 8 The elements of issue preclusion have been met here. The court's decision in *McCrady I* dealt with the same parties and unfolded in the framework of a legal claim different from that pressed here. McCrady's employment classification was a critical issue in the consideration of the question presented in that cause. The court's recitation of the facts there reveals that *McCrady's status as a permanent classified employee at the time of his second discharge went unchallenged by DPS.*[24] DPS had a full and fair opportunity to litigate McCrady's employment status during the proceedings upon the other claim. **It chose either to rely on or not to contest McCrady's status.** The doctrine of issue preclusion hence stands as a complete bar to any future attack upon that employment status. **As a permanent classified employee, McCrady stands entitled to the full cluster of protections of the OMPC and is clearly not subject to discharge without cause.**

17. In his certiorari brief McCrady also urges the legal doctrine of issue preclusion prevents relitigation of his employment status.

18. Issue preclusion and collateral estoppel are two different names for the same legal doctrine. The former term was introduced through the Restatement and the seminal writings by Prof. Allen Vestal, Res Judicata/Preclusion, Personal Injury Annual (1969) Res Judicata/Preclusion: Expansion, 47 S.Cal.L.Rev. 357 (1974); State Court Judgment as Preclusive in Section 1983 Litigation In A Federal Court, 27 Okla.L.Rev. 185, (1974). The latter is a common-law term of long usage. Restatement of Judgments (Second) & 27, comment b (1982).

19. *State ex rel. Oklahoma Bar Ass'n v. Giger,* 2004 OK 43, ¶ 13, 93 P.3d 32, 38; *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 10, 976 P.2d 1056, 1060; *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, ¶ 7, 979 P.2d 252, 255–56; *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.,* 1997 OK 36, ¶ 11, 946 P.2d 662, 665 (citing *Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980)); *Nealis v. Baird,* 1999 OK 98, ¶ 51, 996 P.2d 438, 458.

20. *National Diversified, supra* note 19, at ¶ 11, at 665.

21. *Giger, supra* note 19, at ¶ 13, at 38; *Nealis, supra* note 19, at ¶ 51, at 458.

Issue preclusion is an affirmative defense and must be pleaded and proved. Although appellate application of preclusion is not unheard of, it is uncommon because the principles governing preclusion's invocation have practical applicability almost exclusively in the context of pleading and practice at the trial level. *Nealis, supra* note 19 at ¶ 51, at 458.

22. *Salazar, supra* note 19, ¶ 10, at 1060; *National Diversified, supra* note 19, at ¶ 11, at 666–67; *Nealis, supra* note 19 at ¶ 51, at 458.

23. *Giger, supra* note 19, at ¶ 13, at 38.

24. "The relevant undisputed facts are these. Rodney G. McCrady was a permanent classified employee with the Oklahoma Department of Public Safety (Department), a first Lieutenant with the Oklahoma Highway Patrol, when he was terminated from the position in 2002 for misconduct." *McCrady I, supra* note 2, at ¶ 2, at 67.

## III.

### DPS's Remaining Arguments on Certiorari

¶ 9 DPS continues to urge that McCrady's conduct merits discharge and the OMPC order should be reversed based on its remaining arguments, none of which was addressed either by the district court or COCA. Among these assertions is that the evidence does not support the hearing officer's decision and that she erred (1) by failing to address each of DPS's requested findings of fact and conclusions of law; (2) in her application of the terms of 74 O.S.2001 § 840–6.3 [25] and OAC 455:10–11–4 [26] (dealing with progressive discipline) and of the terms of OAC 455:10–9–2 [27] (dealing with circumstances an ALJ must consider when reducing previously imposed discipline); and (3) in awarding pre- or postjudgment interest to McCrady.

### A.

### Standard of Review

 ¶ 10 The Administrative Procedures Act (APA), 75 O.S.2001 § 322, provides a standard for this court's review of state agencies' orders.[28] An appellate court may

---

**25.** The pertinent terms of the Oklahoma Personnel Act, 74 O.S.2001 § 840–6.3, provide:

B. Progressive discipline is a system designed to ensure not only the consistency, impartiality and predictability of discipline, but also the flexibility to vary penalties if justified by aggravating or mitigating conditions. Typically, penalties range from verbal warning to discharge, with intermediate levels of a written warning, suspension or demotion. Absent mitigating circumstances, repetition of an offense is accompanied by a generally automatic progression to the next higher level of discipline. C. Each supervisor shall be responsible for applying discipline when necessary that is progressive in nature, appropriate for the offense, and equitable. Each supervisor shall consider aggravating or mitigating circumstances when determining the proper disciplinary action. Each supervisor shall use prompt, positive action to avoid more serious disciplinary actions. The Oklahoma Merit Protection Commission shall promulgate rules to establish the requirements and guidelines for discipline.

**26.** The terms of OAC 455:10–11–4 provide:

(a) Progressive discipline is a system designed to ensure not only the consistency, impartiality and predictability of discipline, but also the flexibility to vary penalties if justified by aggravating or mitigating conditions. Typically, penalties range from verbal warning to discharge, with intermediate levels of a written warning, suspension or demotion. Absent mitigating circumstances, repetition of an offense is accompanied by a generally automatic progression to the next higher level of discipline [74:840–6.3]. * * *

**27.** The terms of OAC 455:10–9–2(f)(1)(C) provide:

(C) Upon a finding that just cause existed for the adverse action, but did not justify the severity of the discipline imposed, a presiding official may order reduction of the discipline or other corrective action. A presiding official shall, as a minimum, consider the following circumstances in ordering the reduction of discipline: the seriousness of the conduct as it relates to the employee's duties and responsibilities; the consistency of action taken with respect to similar conduct by other employees of the agency; the previous employment and disciplinary records of the employee; and mitigating circumstances.

**28.** The terms of 75 O.S.2001 § 322 provide:

(1) In any proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
(3) The reviewing court shall affirm the order and decision of the agency, if it is found to be valid and the proceedings are free from prejudicial error to the appellant.

not substitute its judgment for that of the agency on the latter's factual determinations.[29] An agency's order will be affirmed if the record contains substantial evidence in support of the facts upon which the decision is based, and if the order is otherwise free of error.[30] An order is subject to reversal if an appealing party's substantial rights were prejudiced because the agency's findings, inferences, conclusions or decisions were entered in excess of its statutory authority or jurisdiction, were arbitrary or capricious, or were clearly erroneous in view of the reliable, material, probative and substantial competent evidence.[31]

## B.

### The Administrative Hearing Officer's Order Contains Sufficient Information For Judicial Review

¶ 11 Before addressing DPS's other contentions, we turn to its assertion that the hearing officer erred when she failed to address each of DPS-proposed findings of fact and conclusions of law.[32] According to DPS, the terms of 75 O.S.2001 § 312[33] are mandatory—"the final agency order shall include a ruling upon each proposed finding."

¶ 12 An ALJ's findings need not follow any prescribed form.[34] The underlying purpose for the invoked § 312 provision is to enable a reviewing court to intelligently examine the order of an administrative agency and ascertain if the facts and law upon which the order is based afford a reasonable basis.[35] Where the findings cover all facts material and necessary to support its conclusion, the § 312 requirements are met.[36] **Our review of the order reveals the inclusion of sufficient facts and conclusions to meet the law's standard of correctness.[37]**

## C.

### The ALJ Did Not Err When She Reduced the Quantum of Discipline Imposed on McCrady

¶ 13 The terms of the order impose on McCrady a five-day suspension without pay a less severe penalty than that which was imposed upon him for his earlier offense. This, according to DPS, is reversible error because the discipline imposed was not "progressive," in accordance with the terms of § 840–6.3,[38] but was rather "regressive" in

29. *Denney v. Scott,* 1992 OK 134, ¶ 8, 848 P.2d 1142, 1143–44 (citing *Tulsa Area Hosp. Council, Inc. v. Oral Roberts Univ.,* 1981 OK 29, ¶ 10, 626 P.2d 316, 320, and *Toxic Waste Impact Group, Inc. v. Leavitt,* 1988 OK 20, ¶ 12, 755 P.2d 626, 630).

30. *Denney, supra* note 29, at ¶ 8, at 1143–44; *Franco–American Charolaise, Ltd. v. Oklahoma Water Resources Bd.,* 1990 OK 44, ¶ 1 n. 4, 855 P.2d 568, 570.

31. *See Board of Trustees of Oklahoma City Police Pension and Retirement System v. Clark,* 1983 OK 4, 661 P.2d 506, 509–10, n. 22.

32. DPS asserts the requested findings were material to the order.

33. The terms of 75 O.S.2001 § 312 provide:
 A. A final agency order adverse to a party shall:
 1. Be in writing; and
 2. Include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the final agency order shall include a ruling upon each proposed finding. * * *

34. *Denney, supra* note 29, at ¶ 10, at 1144.

35. *Denney, supra* note 29, at ¶ 11, at 1144. That quantum of information essential to a validly supported order was delineated to be sufficient if the content apprises the parties and the reviewing court of the actual basis of the action taken by the administrative body in order that a determination can be made of the existence of substantial evidence and law supporting the decision. *Kline v. State ex rel. Oklahoma Water Resources Bd.,* 1981 OK 156, ¶ 10, 646 P.2d 1258, 1261 (citing *Brown v. Banking Board,* 1973 OK 76, ¶ 8, 512 P.2d 166, 168).

36. *Denney, supra* note 29, at ¶ 11, at 1144; *Davis v. Gwaltney,* 1955 OK 362, ¶ 11, 291 P.2d 820, 825.

37. McCrady does not deny DPS's factual allegations but contends: 1) he was unaware that use of a state vehicle for personal use was prohibited and 2) the discipline of discharge was unjustified based on discipline imposed in similar prior cases. The ALJ's order addressed itself to McCrady's defense of ignorance of the law and referenced three examples where troopers had been disciplined for similar offenses.

38. For the terms of § 840–6.3 and OAC 455:10–11–4 see *supra* notes 25 and 26.
 DPS urges these provisions are applicable to both DPS and the ALJ. We note these terms

nature. For two previous offenses McCrady received a letter of reprimand and then suspension.[39] The next higher level of discipline, according to DPS, should have been discharge.[40]

■ ¶ 14 This court has held that neither OPA nor OMPC rules inflexibly mandate the imposition of progressive discipline in all causes.[41] Although discipline that is progressive is to be the norm, the statute provides for and permits flexibility.[42] A review of the § 840-6.3 terms reveals progressive discipline is not a rigid program but rather forms a "system,"[43] whose design is to be conformable to a variety of circumstances. The flexibility incorporated into its terms is not limited solely to the consideration of aggravating and mitigating circumstances. The discipline to be imposed is also to be "equitable" and "appropriate for the offense."[44] In short, discharge is not a mandatory next step in McCrady's case. The hearing officer committed no error when she

ordered a reduction of McCrady's discipline from that of a discharge to that of a five-day suspension.

■ ¶ 15 DPS further urges the ALJ erred when she admitted into evidence disciplinary records of lower-ranking troopers and compared the discipline imposed on them with that sought to be imposed on McCrady.[45] According to DPS, the terms of OAC 455:10-9-2(f)(1)(C)[46] limit the comparison of discipline received by others to those who are "similarly situated" and who have committed similar infractions.[47] For support of its position, DPS cites to *Watts v. City of Norman.*[48] That case teaches that in disciplinary matters the comparison of employees that are not "similarly situated" is not legally relevant, and nonsupervisory and supervisory employees cannot be deemed to be similarly situated.[49]

■ ¶ 16 The teaching of *Watts* is inapplicable to today's cause. It dealt with a Title VII action where the comparison of similarly-

---

apply to a supervisor's imposition of discipline upon an employee. We address its assertion to show that the provision's terms do not inflexibly require progression of discipline even if the ALJ were bound by the terms of this rule.

39. For more information dealing with McCrady's earlier discipline, see *supra* note 3.

40. For the terms of § 840-6.3 and OAC 455:10-11-4 see *supra* notes 25 and 26.

41. *Cox v. State of Oklahoma ex rel. Oklahoma Department of Human Services,* 2004 OK 17, 87 P.3d 607. The question presented to the court in *Cox* was whether the terms of § 840-6.3 require the imposition of lesser discipline before a more severe one may be levied.

42. *Cox, supra* note 41, at ¶ 21, at 615.

43. For the terms of § 840-6.3 and OAC 455:10-11-4 see *supra* notes 25 and 26.

44. For the terms of § 840-6.3 and OAC 455:10-11-4 see *supra* notes 25 and 26.

45. DPS further contends these records are improperly admitted hearsay and the ALJ may not rest her decision solely upon these (citing *Mobilfone Service, Inc. v. Corporation Commission,* 1978 OK 98, ¶ 8, 580 P.2d 995, 997). The record reflects these items are official DPS records. The ALJ's order further reflects that 1) no tenders of proof were offered by DPS of officers who were discharged for behavior similar to McCrady's and 2) the testimony of three DPS superior officers revealed they knew of no instances where an officer had been discharged for

conduct similar to McCrady's. The second case DPS cites in support of its latter assertion, *Civil Service Commission of the City of Tulsa v. Gresham,* 1982 OK 125, 653 P.2d 920, is not pertinent. It dealt with the prohibition of the admission of affidavits and transcript testimony from a previous trial, not official disciplinary records.

Because of our ruling dealing with the terms of OAC 455:10-9-2, we do not address DPS's argument that the disciplinary records of lower-ranked troopers are irrelevant and unreliable.

46. For the terms of OAC 455:10-9-2(f)(1)(C) see *supra* note 27.

47. DPS refers to this as "comparative discipline." It contends the ALJ misapplied the terms of comparative discipline when she failed to consider: 1) other troopers were not under the strictures of the reinstatement imposed on McCrady; 2) McCrady, as a first lieutenant, had greater responsibilities and was held to a higher standard of conduct than the other troopers; and 3) instances of other troopers' past discipline may not have been reflected in the records used for comparison purposes; and 4) a different supervisor may have issued the discipline on the other troopers. DPS further urges the other troopers' misconduct was not similar to McCrady's.

48. *Watts v. City of Norman,* 270 F.3d 1288 (10th Cir.2001).

49. *Watts, supra* note 48, at 1294-96.

situated employees is but one method a plaintiff may use to prove the third element of a prima facie case of disparate treatment.[50] Today's certiorari does not deal with a Title VII claim but rather the terms of the OAC. Neither do the terms of OAC 455:10–9–2(f)(1)(C) require that employees be similarly situated before invocation of its terms. It merely provides that a hearing officer consider "the consistency of action taken with respect to *similar conduct by other employees of the agency* "[51] (emphasis supplied). Comparisons of discipline are hence not confined solely to those whose rank or duties are parallel. The hearing officer's consideration of the discipline imposed by DPS on other lower-ranking troopers who committed similar infractions was not improper.

 ¶ 17 Lastly, DPS asserts the ALJ's decision is tainted by error of law and is arbitrary, capricious, and clearly erroneous in view of the reliable, material, probative and substantial competent evidence. This is so because the terms of § 840–6.3 and OAC 455:10–9–2(f)(1)(C) require an ALJ to consider aggravating and mitigating circumstances, the seriousness of the conduct as it relates to the employee's duties and responsibilities, and the employee's previous disciplinary records.[52] In light of these considerations, according to DPS, there is in essence no valid reason for deviating from the discipline of discharge that stood imposed upon McCrady.

¶ 18 It is not our province to substitute this court's judgment for that of the administrative hearing officer's. Rather, we review the record and affirm the order if the record contains substantial evidence in support of the facts upon which the decision is based. DPS presented testimony dealing with the circumstances of this cause as well as the high standard of conduct expected of a first lieutenant. That McCrady had been previously disciplined lies at the base of this cause. Evidence submitted by McCrady revealed several instances where DPS dealt to other troopers a much less severe discipline than discharge for unlawful operation or improper use of a patrol vehicle.[53] The hearing officer noted that DPS presented no evidence to show that officers were ever discharged for engaging in behavior similar to that of McCrady. **Upon our review of the record and of the discipline levied upon McCrady, we cannot say that the hearing officer's order was unsupported by substantial evidence that is competent.**

### D.

### An Administrative Hearing Officer's Adjudicative Authority is Co-extensive with that of the Board

 ¶ 19 Lastly, DPS objects to the ALJ's award to McCrady of postjudgment interest.[54] It urges she exceeded her author-

---

**50.** *Jones v. Denver Post Corp.,* 203 F.3d 748, 753 (10th Cir.2000). A prima facie case of disparate discipline may be established if a plaintiff proves by a preponderance of the evidence that: 1) the plaintiff is a racial minority; 2) the plaintiff was disciplined by the employer; and 3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination. *Jones* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**51.** For the terms of OAC 455:10–9–2(f)(1)(C) see *supra* note 27.

**52.** DPS asserts the ALJ failed to consider that law enforcement officers are held to a higher standard of conduct than other state employees. For support of this argument, it cites the Canons of Police Ethics and several foreign state court decisions.

**53.** The ALJ's order noted three examples where the discipline issued was a written reprimand or short-term suspension. Two of these instances

resulted in vehicle collisions or accidents with injuries.

**54.** Although the parties' appellate briefs refer to interest and prejudgment interest, the ALJ's order awarded postjudgment interest to McCrady.

DPS appellate briefs further assert that the ALJ was without authority to award back pay and benefits in accordance with the provisions of OAC 455:10–9–2(f)(1)(C), *supra* note 27. Its terms, which deal with situations where a finding that just cause existed for the adverse action but did not justify the severity of the discipline imposed, provide for a reduction of the discipline or other corrective action. According to DPS, an award of back pay and benefits is not authorized. Although the terms "other corrective action" may be broadly interpreted, this provision was amended, effective 1 July 2002. Subsection (D) now provides: "A presiding official who orders reinstatement with back pay and benefits under (B) and (C) above, ..." Because this change was in effect at the time of McCrady's discharge, we do not address this argument.

ity because there is no administrative rule that provides for interest on an administrative order. This assertion is without merit. The terms of OAC 455:10–21–1 [55] provide for broad powers held by administrative hearing officers. Moreover, because it is the agency's commissioners who bestow their adjudicative power upon all ALJs, power of the latter is coextensive with that of the commission.[56] **In awarding postjudgment interest, the hearing officer did not exceed her commission-conferred jurisdiction.**

### IV.

### SUMMARY

¶20 McCrady's employment status was pertinent to the substantive issue in an earlier dispute between today's parties. In that cause it stood uncontested by DPS. That status-consisting of a permanent classified employment in accordance with the terms of the Oklahoma Merit Protection Commission rules-stands settled and is now protected from further relitigation by the legal doctrine of issue preclusion. As a permanent classified employee, McCrady is entitled to the full protection of the Commission rules. He cannot be discharged without cause. We further hold the administrative hearing officer in this cause committed no error in the order under review.

¶21 On certiorari previously granted, the Court of Civil Appeals' pronouncement is vacated and the decision of the district court that affirms the administrative hearing officer's decision is reinstated.

**55.** The terms of what is now OAC 455:10–21–1 provide:

(a) General. Administrative Hearing Officers shall be assigned by the Executive Director to preside over prehearing conferences and hearings. An Administrative hearing Officer shall be fair and impartial and take all necessary action to avoid delay in the resolution and disposition of an appeal. An Administrative hearing Officer shall have all powers necessary to that end which are not otherwise prohibited. * * *

**56.** The terms of OAC 455:10–1–7 provide:

* * *(b) The Commissioners and the Executive Director may take action to carry out the duties of the Commission and to accomplish the objectives of any program or activity within the Commission's jurisdiction and authority. The terms of 74 O.S.2001 § 840–1.8 provide:

¶22 WINCHESTER, C.J., EDMONDSON, V.C.J. and LAVENDER, HARGRAVE, OPALA, KAUGER, WATT, TAYLOR and COLBERT, JJ., concur

* * *The Executive Director, with the approval of the Commission, may employ and compensate an attorney and shall select, compensate and employ such administrative hearing officers and other personnel as deemed necessary for the proper administration of the duties and functions of the Commission. * * *
The terms of 74 O.S.2001 § 840–1.9 provide:
In addition to any other duties expressly set forth by law, the Oklahoma Merit Protection Commission shall:
* * *(4) Investigate allegations of violations of the rules of the Merit System of Personnel Administration and prohibited activities in the classified service; * * *
The terms of OAC 455:10–9–5 provide:
* * *(2) The decision of the Administrative Law Judge shall be final and conclusive except as provided in the Administrative Procedures Act and OAC 455:10–3–20.