OKLAHOMA DEPT. OF CORRECTIONS v. BYRD
2023 OK 97
Case Number: 119908 (cons. w/ 119907)
Decided: 10/10/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 97, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

OKLAHOMA DEPARTMENT OF CORRECTIONS, Petitioner/Appellant,
v.
CINDY BYRD, in her official capacity as State Auditor and Inspector of the State of Oklahoma, and BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TULSA, OKLAHOMA, and TULSA COUNTY CRIMINAL JUSTICE AUTHORITY, Respondents/Appellees.

ON CERTIORARI TO COURT OF CIVIL APPEALS, DIVISION III

HONORABLE DON ANDREWS, TRIAL JUDGE

¶0 On request of Tulsa County, the Oklahoma State Auditor and Inspector calculated the jail's "actual daily cost" to house Department of Corrections inmates pursuant to 57 O.S. § 38

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

Craig A. Fitzgerald, Timothy J. Sullivan, Justin A. Lollman, GABLEGOTWALS, Tulsa, Oklahoma for Petitioner/Appellant.

V. Glenn Coffee, Lexie P. Norwood, and Denise Lawson, GLENN COFFEE & ASSOCIATES, PLLC, Oklahoma City, Oklahoma for Respondent/Appellee Cindy Byrd, in her official capacity as State Auditor and Inspector of the State of Oklahoma.

David B. Donchin, DURBIN, LARIMORE & BIALICK, Oklahoma City, Oklahoma for Respondent/Appellee Cindy Byrd in her official capacity as State Auditor and Inspector of the State of Oklahoma.

Douglas A. Wilson, Assistant District Attorney, Tulsa County District Attorney's Office, Tulsa, Oklahoma for Respondent/Appellee Board of County Commissioners of the County of Tulsa.

Stephen A. Kunzweiler, Tulsa County District Attorney, Tulsa County District Attorney's Office, Tulsa, Oklahoma for Respondent/Appellee Board of County Commissioners of the County of Tulsa.

Sharon K. Weaver, RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS, P.C., Tulsa, Oklahoma for Respondents/Appellees Board of County Commissioners of the County of Tulsa and Tulsa County Criminal Justice Authority.

OPINION

ROWE, V.C.J.:

¶1 Oklahoma counties are required to house state prison inmates in certain instances.57 O.S. 2017, § 38

BACKGROUND

¶2 In 2011, the Honorable Josh Brecheen asked the Attorney General whether "Oklahoma counties [are] required to accept payment from the Department of Corrections at the rate set out in Section 38 of Title 57 of the laws of Oklahoma?"

¶3 In light of the Attorney General's opinion, the Board of County Commissioners of Bryan County challenged § 38's constitutionality in district court. The district court concluded that when a county's cost exceeds $27, the county "is entitled to reimbursement from the State of Oklahoma in an amount sufficient to fully reimburse the costs of housing incurred by the county for such inmate without being limited by the cap limit provided by 57 O.S. § 38See Bd. of Cnty. Comm'rs of the Cnty. of Bryan v. Oklahoma Dep't of Corrections, 2015 OK CIV APP 86362 P.3d 241

¶4 In light of the Attorney General's 2011 opinion and Board of County Commissioners of the County of Bryan v. Oklahoma Department of Corrections, Tulsa County retained MGT of America, Inc., a nationwide professional services firm specializing in calculating jail costs and rates, to conduct a rate study of the Tulsa County jail. MGT determined Tulsa County's "actual daily cost" for housing, caring for, and feeding inmates was $55.81 per inmate per day.

¶5 During the pendency of the suit, the Legislature amended 57 O.S. 2015, § 38

The Department of Corrections shall reimburse any county which is required to retain an inmate pursuant to subsection D E of Section 37 of this title in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention, unless the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section, exceeds Twenty-seven Dollars ($27.00). If the actual daily cost as determined by the Department of Corrections Daily Rate exceeds Twenty-seven Dollars ($27.00), the county shall notify the Department of Corrections of the actual daily cost no later than September 30. If the county's actual daily cost is accepted by the Department that shall be the reimbursement rate for the county beginning the next fiscal year. If the Department rejects the county's actual daily cost application, then the actual daily cost reimbursement shall be determined by the State Auditor and shall be imposed beginning the next fiscal year.

2017 Okla. Sess. Law Serv. Ch. 260 (H.B. 1483) (omitted text in strikethrough, new text in underline).

¶6 Despite § 38's amendment, Tulsa County did not seek a reimbursement determination from the State Auditor and Inspector ("State Auditor") and chose to maintain its claims against DOC in district court. DOC moved for Partial Summary Judgment asking the court to find "that DOC does not have to reimburse Tulsa County for the fixed costs of operating the Tulsa County jail"57 O.S. 2017, § 38

¶7 Judge Susan Stallings granted DOC's Motion for Partial Summary Judgment, ruling that Tulsa County's "reimbursable costs cannot include [] fixed costs, . . . but are instead limited to consumables such as the actual costs of feeding, housing, clothing, providing medical treatment, attributable to the presence of Department of Corrections inmates in the Tulsa County jail in excess of the $27 statutory per diem rate, as proven at trial."12 O.S. § 952

¶8 Following the denial of certiorari review, Tulsa County sent a letter to the State Auditor, requesting that she determine the "actual daily cost" of a DOC inmate pursuant to § 38. After the State Auditor agreed to determine the "actual daily cost" reimbursement rate for a DOC inmate, Tulsa County voluntarily dismissed its case against DOC.

¶9 After learning the State Auditor agreed to determine the "actual daily cost," representatives from DOC requested a meeting with the State Auditor to discuss Tulsa County's request for a rate determination. DOC representatives noted that Tulsa County's request was procedurally improper and requested that if the State Auditor determines a reimbursement rate, that she do so according to Judge Stallings' Order. The State Auditor notified Tulsa County that the "actual daily cost" to house a DOC inmate was $63.42.

THE PRESENT LAWSUIT

¶10 On July 28, 2020, DOC filed a Petition for Review, or in the Alternative, Declaratory Judgment or Writ of Mandamus against the State Auditor and Tulsa County in Oklahoma County District Court. The DOC asked the district court to (1) set aside the State Auditor's reimbursement rate determination; (2) remand the matter to the State Auditor with instruction to follow requirements for an individual proceeding under the Oklahoma Administrative Procedure Act ("OAPA") and determine the actual daily cost reimbursement rate pursuant to 57 O.S. § 3857 O.S. § 3857 O.S. § 38

¶11 Tulsa County filed a Motion to Dismiss which the district court denied. Following the denial, DOC, the State Auditor, and Tulsa County filed cross-motions for Summary Judgment. DOC argued (1) the State Auditor failed to apply the correct meaning of "actual daily cost" pursuant to 57 O.S. § 3857 O.S. § 38

¶12 The district court granted Tulsa County and the State Auditor's Motion for Summary Judgment, finding the court lacked subject matter jurisdiction "in adjudicating any claim that would require a district court to decide the 'actual daily cost reimbursement.'"

¶13 COCA reversed and remanded the district's ruling holding that "the § 38 rate determination is a justiciable matter granting the court with subject matter jurisdiction."57 O.S. § 38

¶14 Both DOC and the State Auditor sought certiorari review of COCA's opinion. The DOC contends COCA's determination that "actual daily cost" includes fixed costs is incorrect and presents a question of statewide importance. The State Auditor contends COCA erred finding the district court had jurisdiction over the dispute because the State Auditor was exercising her discretionary executive power granted to her by the Legislature and interference by the courts would violate the separation of powers. In addition, the State Auditor argues COCA erred in remanding the case because the district court already made the determination that the State Auditor's calculation of the "actual daily cost" was rational. In turn, Tulsa County contends certiorari review is unwarranted because the requests for review go beyond the merits of the appeal.

STANDARD OF REVIEW

¶15 Summary judgment settles only questions of law. Lowery v. Echostar Satellite Corp., 2007 OK 38160 P.3d 959de novo. Id. Where a controversy is resolved by summary judgment, the appellate courts review the entire summary judgment record independently and without deference to a lower court. Id. Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. Under de novo review, we have plenary, independent and nondeferential authority to determine whether the district court erred in its legal ruling. Fanning v. Brown, 2004 OK 785 P.3d 841Id.

ANALYSIS

A. Issue Preclusion Is Not Applicable.

¶16 On appeal, DOC contends Judge Stallings' order in CV-2017-684 has preclusive effect over this case. In Board of County Commissioners of the County of Tulsa v. Oklahoma Department of Corrections, No. CV-2017-684 (District Court of Oklahoma County, March 31, 2017) (certiorari denied), Judge Stallings' Order for Summary Judgment held that "actual daily cost" is limited to consumables and excludes fixed costs of the county jail. Tulsa County and the State Auditor contend the doctrine of issue preclusion does not apply because the State Auditor was not a party to the previous case (CV-2017-684). DOC argues it is irrelevant whether the State Auditor was a party to the previous case because the issue preclusive effect of Judge Stallings' interlocutory order applies only to Tulsa County, who along with DOC, are the only real parties in interest here.

¶17 Issue preclusion "is activated when an ultimate issue has been determined by a valid and final judgment--that question cannot be relitigated by [the same] parties, or their privies, to the prior adjudication in any future lawsuit." Carris v. John R. Thomas & Assocs., P.C., 1995 OK 33896 P.2d 522Oklahoma Dep't of Pub. Safety v. McCrady, 2007 OK 39176 P.3d 1194Id. "Issue preclusion requires, at a minimum, that the party against whom it is being asserted was either a party to or a privy of a party to the prior action . . ." State ex rel. Tal v. City of Okla. City, 2002 OK 9761 P.3d 234

B. The Separation of Powers Clause Does Not Bar This Court from Interpreting the Meaning of "Actual Daily Cost."

¶18 The State Auditor and Tulsa County claim district courts do not have subject matter jurisdiction over this matter because exercising jurisdiction would violate the separation of powers clause. More specifically, the State Auditor and Tulsa County contend the Legislature vested the State Auditor with discretionary executive authority to determine the "actual daily cost" of a DOC inmate, thereby prohibiting the judiciary from interfering with the State Auditor's executive power. Thus, the question is whether the separation of powers clause prevents us from determining the meaning of "actual daily cost" as provided in 57 O.S. § 38

¶19 Subject matter jurisdiction is the "power to deal with the general subject involved in the action" or the nature of the cause of action and the relief sought. Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532Id. In addition to other courts, the Oklahoma Constitution specifically vests district courts with judicial power.

The Powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive and Judicial departments of government shall be Separate and distinct, and neither shall exercise the powers Properly belonging to either of the others.

Okla. Const. art. 4, § 1 (emphasis added). The doctrine of separation of powers mandates that "the whole power of one department shall not be exercised by the same hands which possess the whole power of either of the other departments; and that no one department ought to possess directly or indirectly an overruling influence over the others." State ex rel. York v. Turpen, 1984 OK 26681 P.2d 763Bynum v. Strain, 1923 OK 596218 P. 883

¶20 The Oklahoma Constitution makes the State Auditor an executive officer of the state.Clark v. Carter, 1922 OK 106209 P. 932

¶21 The State Auditor contends that because 57 O.S. § 38Independent School Dist. No. 1 of Oklahoma Cty. v. Scott, 2000 OK CIV APP 12115 P.3d 1244

¶22 Asking us to interpret the meaning of a statute does not create a separation of powers conflict. As the Judiciary, we are the "ultimate authority on the interpretation of the laws of this State." Robinson v. Fairview Fellowship Home For Senior Citizens, Inc., 2016 OK 42371 P.3d 477

¶23 In Bynum v. Strain, the removed bank commissioner sought an enjoinment of his successor, claiming the Governor's removal of him and the appointment of his successor was without authority. Bynum, 1923 OK 596218 P. 883 Id. ¶ 10, 218 P. at 885. We held "in the absence of express authority of law so to do [sic], the courts will not cross the confines of judicial province and interfere with the exercise of executive powers nor with the executive's sense of his duties and responsibilities. Id. ¶ 11. However, we also recognized that if there is a question of statutory interpretation, "it then becomes the duty and proper province of the judiciary to interpret such law and declare its meaning [and] the executive will then be guided by the court's interpretation of the law and will execute the court's mandates." Id. ¶ 12.

¶24 In this instance, DOC seeks our determination of the meaning of "actual daily cost" in § 38. Our role as the Judiciary rests in statutory interpretation; therefore, interpreting the meaning of "actual daily cost" falls exclusively within our purview. The State Auditor was assigned the duty to calculate the "actual daily cost" of housing a DOC inmate in a county jail--a role that falls exclusively within the purview of the State Auditor's statutory duties. By interpreting the meaning of § 38, we are not interfering with the State Auditor's performance of her executive duty. Without our interpretation, the State Auditor effectively confers meaning to § 38 by the method she chooses which reaches into the realm of a judicial function--a task beyond the authority of the State Auditor. Ascertaining the meaning of § 38 will provide guidance to the State Auditor in her role of calculating the "actual daily cost" of housing a DOC inmate. Accordingly, the separation of powers clause does not bar our review.

C. "Actual Daily Cost" Includes Any Cost That Is Directly Attributable to Housing a DOC Inmate.

¶25 The heart of this dispute revolves around the meaning of "actual daily cost," as provided in § 38. Title 57 O.S. § 38

The Department of Corrections shall reimburse any county which is required to retain an inmate pursuant to subsection E of Section 37 of this title in an amount not to exceed Twenty-seven Dollars ($27.00) per day for each inmate during such period of retention, unless the actual daily cost as determined by the Department of Corrections Daily Rate as defined in this section, exceeds Twenty-seven Dollars ($27.00). If the actual daily cost as determined by the Department of Corrections Daily Rate exceeds Twenty-seven Dollars ($27.00), the county shall notify the Department of Corrections of the actual daily cost no later than September 30. If the county's actual daily cost is accepted by the Department that shall be the reimbursement rate for the county beginning the next fiscal year. If the Department rejects the county's actual daily cost application, then the actual daily cost reimbursement shall be determined by the State Auditor and shall be imposed beginning the next fiscal year. The Department shall distribute the reimbursement on a monthly basis upon receipt and approval of a billing statement from the county. The county shall use the reimbursement to defray expenses of equipping and maintaining the jail and payment of personnel.

57 O.S. § 38

¶26 The DOC contends "actual daily cost" is limited to consumable costs attributable to the presence of a DOC inmate and excludes fixed costs. Tulsa County contends "actual daily cost" includes both consumable costs and fixed costs because the cost to house a DOC inmate(s) is proportionate to the total cost of housing all inmates. The Legislature did not define "actual daily cost," thus, we are confronted with a question of statutory interpretation.

¶27 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23415 P.3d 521Id. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 11037 P.3d 882Odom, ¶ 18, 415 P.3d at 528.

¶28 Because the statute does not define "Department of Corrections Daily Rate"

¶29 Since the inception of this suit, the parties have borrowed the terms "consumable costs" and "fixed costs" from Judge Stallings' order in case No. CV-2017-684. In her order, Judge Stallings defined "consumable costs" as "the actual costs of feeding, housing, clothing, providing medical treatment, attributable to the presence of Department of Corrections inmates in the Tulsa County jail"

¶30 It is undisputed that the "actual daily cost" of housing a DOC inmate includes "consumable costs" such as food, clothes, and medical care. It is disputed whether "fixed costs," which the parties refer to as the jail's operating expenses, are included within "actual daily cost." Operating expenses are not necessarily dependent on the number of prisoners, as some operating expenses are inevitably incurred regardless of whether a DOC inmate is housed in a county jail. However, there may be instances when a jail's operating expenses increase due to housing a DOC inmate. For example, if a county jail employs a set number of jailers in the regular operation of its jail, that cost is not directly attributable to housing a DOC inmate. If, however, a county jail employs an additional jailer and demonstrates the hiring of the additional jailer is directly attributable to housing a DOC inmate, such cost would exist in fact and be included in the "actual daily cost." We find that "actual daily cost" includes any cost directly attributable to the housing of a DOC inmate, including consumable costs and any portion of the county jail's operating expenses that would not otherwise have been incurred but for the presence of a DOC inmate.

¶31 Our finding that "actual daily cost" encompasses costs directly attributable to housing a DOC inmate is further supported by the manifest purpose of § 38, which is directed at reimbursing county jails. The word "reimburse" means "to pay back, to make restoration, to repay that expended."

¶32 The State Auditor's methodology in calculating "actual daily cost" fails to account for these important distinctions. Specifically, the State Auditor employed an "operating cost-based calculation," which does not result in a determination of "actual daily cost" as defined above. Without rehashing her method in detail, the State Auditor assigned a pro rata share of the jail's operating expenses to DOC, without regard for whether those costs would have been incurred in the absence of DOC inmates.57 O.S. § 38

¶33 Reading the statute in its entirety, § 38 requires DOC to reimburse a county for the "actual daily cost" of housing a DOC inmate. "Actual daily cost" includes any cost incurred by a county shown to be directly attributable to housing a DOC inmate. The term "actual daily cost" encompasses both consumable costs (e.g., food and clothing) as well as those additional costs incurred as a direct result of housing a DOC inmate. Costs not directly attributable to the housing a DOC inmate are not reimbursable by DOC.

CONCLUSION

¶34 Oklahoma law requires DOC to reimburse a county the cost of housing a DOC inmate. Title 57 O.S. 2017, § 38

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

Kane, C.J., Rowe, V.C.J., Winchester, Gurich, and Kuehn (by separate writing), JJ., concur.

Kauger, Edmondson, Combs (by separate writing), and Darby, JJ., concur in part; dissent in part.

FOOTNOTES

1. For the detention of persons charged with offenses, and duly committed for trial.

2. For the detention of persons who may be duly committed, to secure their attendance as witnesses on the trial of any criminal cause.

3. For the confinement of persons pursuant to a sentence, upon a conviction for an offense and of all other persons duly committed for any cause authorized by law.

4. For the confinement of persons who may be sentenced to imprisonment in the state prison, until they shall be removed thereto.

57 O.S. § 42

57 O.S.2017, § 38

2011 OK AG 8

2011 OK AG 8

Id.

Rather than attempting to paraphrase her method, we have included an excerpt from the State Auditor's Letter to Tulsa County wherein she explains her calculations:

SAI has made a reasonable determination as to the daily, per inmate, cost to house an individual in the county jail by dividing the average annual number of prisoners by the total annual operating costs of the jail and dividing again by 365 days.

The daily average number of inmates incarcerated at the jail in FY19 was 1,398. The facility's annual operating costs totals $32,351,882.42.

32,351,882.42 ÷ 1,398 ÷ 365 = $63.40

At any given time, DOC housed an average of 77 prisoners at the county jail in FY19 which was equal to 5.51 percent of the total jail population. SAI took the average number of DOC prisoners housed at the county jail, multiplied this percentage by the total annual operating costs of the jail, divided this figure by 77 prisoners, then again by 365 days, to arrive at a figure very close to the more practical calculation noted above.

$32,351,882.42 X 0.0551 = $1,726,028.26 ÷ 77 = 22,415.95 ÷ 365 = $63.43

The average of both calculations would suggest a daily reimbursement rate to house a prisoner in the county jail of $63.42.

DLB Energy Corp. v. Oklahoma Corp. Comm'n, 1991 OK 5805 P.2d 657Id. Because Judge Stallings' order was interlocutory, issues remained to be tried by the parties, making her order not final for purposes of issue preclusion.

The judicial power of this State shall be vested in the Senate, sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal Appeals, the Court on the Judiciary, the State Industrial Court, the Court of Bank Review, the Court of Tax Review, and such intermediate appellate courts as may be provided by statute, District Courts, and such Boards, Agencies and Commissions created by the Constitution or established by statute as exercise adjudicative authority or render decisions in individual proceedings. Provided that the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute shall continue in effect, subject to the power of the Legislature to change or abolish said Courts, Boards, Agencies, or Commissions. Municipal Courts in cities or incorporated towns shall continue in effect and shall be subject to creation, abolition or alteration by the Legislature by general laws, but shall be limited in jurisdiction to criminal and traffic proceedings arising out of infractions of the provisions of ordinances of cities and towns or of duly adopted regulations authorized by such ordinances. Okla. Const. art 7, § 1.

A. The Executive authority of the state shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor and Inspector, Attorney General, State Treasurer, Superintendent of Public Instruction, Commissioner of Labor, Commissioner of Insurance and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law. Okla. Const. art. 6, § 1 (A).

Board of County Commissioners of County of Seminole v. Oklahoma Department of Corrections, 2021 OK CIV APP 33499 P.3d 3357 O.S. § 38

We note, parenthetically, that DOC's prevailing argument in Seminole wherein it argued that the State Auditor had exclusive jurisdiction over disputes between counties and DOC for reimbursement claims contradicts its argument here that "asking the judiciary to interpret a statute does not create a separation of powers conflict with the Auditor's § 38 duties."

The separation of powers clause does not bar this Court from exercising jurisdiction to determine the meaning of a statute where the interpretation of a statute directly relates to how an officer of the executive branch must perform her statutory duty. Accordingly, our finding today overturns Seminole.

57 O.S. § 38

cost of housing [an] inmate in the county jail. . . ." 57 O.S. § 37

Id., 2-3.

57 O.S. § 38

57 O.S. § 3757 O.S. § 4257 O.S. § 37

. See State ex rel. Dept. Human Serv. v. Malibie, 1981 OK 18630 P.2d 310

KUEHN, J., SPECIALLY CONCURRING:

¶1 I agree with the Majority that issue preclusion does not bar the courts from hearing this case.

¶2 I also agree with the Majority that the separation of powers clause does not prevent this Court from interpreting the meaning of "actual daily cost." Section 38 does not give the State Auditor authority to define "actual daily cost"Bynum v. Strain, 1923 OK 596218 P. 883

¶3 It is important to understand that in interpreting the ambiguous statutory term, this Court's interpretation is not intended to direct the State Auditor as to how she should do her job--in fact, it should not. Instead, our interpretation of the definition of "actual daily cost" should do no more than broadly guide the State Auditor, and counties, when determining what should be included in their calculations. The State Auditor is an executive of the state, and under Title 57 Section 38 may, to resolve a dispute between the DOC and a county, determine the amount of actual daily cost reimbursement due the county.

¶4 I write separately to address the Majority's third assertion that "actual daily cost" should include any cost that is "directly attributable" to housing a DOC inmate. It is undisputed that consumable costs should be included in the calculation of the "actual daily cost" of housing a DOC inmate. I agree with the Majority that sometimes a jail's fixed, operating expenses can increase as a result of housing a DOC inmate. The Majority deliberately sets out a general definition which includes both consumable costs and the possibility of fixed costs. But, in my view, neither this Court nor district courts are equipped to determine actual costs for any county that are directly attributable to the housing of a DOC inmate. As the statute provides, those calculations are better left to counties, the State Auditor, and their accountants.

FOOTNOTES

COMBS, J., with whom KAUGER, EDMONDSON, and DARBY, JJ., join, concur in part, dissent in part:

¶1 I concur in the majority opinion that we are asked to interpret the term "actual daily cost" and this Court has subject matter jurisdiction over this matter. However, I dissent to the majority opinion's interpretation. The Legislature granted the State Auditor with discretion to determine the "actual daily cost reimbursement." See 57 O.S. § 38

¶2 The majority opinion limits "actual daily cost" to only the cost "directly" attributable to housing a DOC inmate "as opposed to costs incurred by a county regardless of whether it houses a DOC inmate." It provides that such costs would include an "additional jailer [that] is directly attributable to housing a DOC inmate." It finds any cost not directly attributable to housing an inmate is not reimbursable. However, 57 O.S. § 3857 O.S. § 3857 O.S. § 38